Argued June 28, affirmed September 5, 1963

# STATE OF OREGON *v.* HUNTER

384 P. 2d 983

*Donald A. Dole,* and *Harrison R. Winston,* Roseburg, argued the cause and filed a brief for appellant.

*Verden L. Hockett, Jr.,* Deputy District Attorney, Roseburg, argued the cause for respondent. With him

on the brief was Avery W. Thompson, District Attorney.

Before McAllister, Chief Justice, and Rossman, Sloan, Goodwin and Lusk, Justices.

LUSK, J.

The defendant, Bill Ernest Hunter, was convicted of the crime of armed robbery and has appealed, assigning as error the court's denial of his motion for a directed verdict of not guilty based on the alleged insufficiency of the evidence to establish the charge.

In the early morning of May 24, 1962, Clarence Edgar Lemmon, the attendant at a gasoline service station known as Hilltop Flying A, located about two miles south of Roseburg, Douglas County, Oregon, was confronted by a man armed with a revolver and forced to lie on the floor of the station, bound and tied, while the robber removed and made off with the money in the cash register. Although the man's face was covered with a portion of a woman's stocking, Lemmon was able to recognize him as an acquaintance named Mickey Gray. There is evidence from which the jury could have found that two persons participated in the crime, for, while lying on the floor, Lemmon heard the noise of the opening of drawers and, at the same time, the sound of someone operating a cigarette machine located several feet away from the drawers, and he managed to release himself from his bonds and saw Gray and another man in a car driving away from the station immediately after the robbery was completed. He was unable, however, to identify Gray's accomplice.

The service station was operated on daylight time and Lemmon testified that the robbery occurred at

4 a.m., daylight time. As the time element is of some importance and officers of the State Police who investigated the crime went by standard time, it will avoid confusion to state the time of the robbery as 3 a.m., standard time, and when time is hereinafter referred to it will be understood as meaning standard time.

After the robbers had departed Lemmon hurried to the home of Harvey Norman Berna, owner of the service station, told him of the occurrence and Berna reported it by phone to the Oregon State Police. Richard Bouey, sergeant of State Police, stated that he received the call and arrived at the gas station at 4:25 a.m. Later in the morning he interviewed Gray and the defendant Hunter.

Officer Richard Kent Scott of the State Police was on patrol in the early morning hours of May twenty-fourth. He received a radio call about the robbery at approximately 4 a.m. He was told to look for a man named Mickey Gray and was given a description of the car in which the robbers were making their getaway. He stationed his car "in a pullout" along the highway where he anticipated he might intercept them. He remained there until about 4:15 a.m., when, concluding that they had taken another route, he proceeded north to the area of Dillard, which is about six miles south of the Flying A gas station. In Dillard he came upon the defendant and Gray, who were walking north along the highway. He stopped them and questioned them. Gray gave the name of Billy Simmons. The defendant told him his name was Billy Hunter. This was at approximately 4:25 a.m. He asked them "from where they were coming" and they answered "they were coming back from the mill." This reference was to the mill of the Roseburg

Lumber Company, which is located on the same high-way about a mile south of the point where Officer Scott questioned the two men and which appears to have been operating on a three shift basis, 24 hours a day. Officer Scott then proceeded on his way.

Lemmon testified that he had counted the money in the cash register prior to the robbery and that it consisted of currency as follows: 39 ones, 16 fives, 8 tens, and 1 twenty, totaling $219. There were in addition some quarters. All the currency was taken by the robbers.

An abandoned car, belonging to Mack Morgan, an employee of the Roseburg Lumber Company, which was used by Gray and his accomplice in perpetrating the robbery, was discovered by a state police officer on the morning of May 24, 1962, on a side road about eight miles south of the Flying A gas station and 1.2 miles southwest of Dillard. The car was stolen while Morgan was at work sometime after 10:30 p.m., of the night in question. In the glove compartment of the car were three $1 bills and on the floorboard the upper part of a woman's stocking.

Gray and Hunter were placed under arrest on May twenty-fourth. They had on their persons at the time money described as follows:

Hunter, 1 ten, 3 fives, 3 ones, 5 quarters, 1 dime, 1 nickel, and 1 penny, totalling $29.41.

Gray, 1 ten, 1 five, 3 ones, and 3 quarters, total-ing $18.75.

A few days later there were found hidden near the roadside in the vicinity of the point where Officer Scott had accosted Hunter and Gray a revolver wrapped in rubber gloves and $150 in currency of the

following denominations: 1 twenty, 6 tens, 8 fives, and 30 ones.

Thus, of the currency stolen, a sum equal to all but $20 was recovered. Sixteen five dollar bills were stolen and four five dollar bills were never recovered.

About 7:30 on the morning of May 24, Sergeant Bouey interviewed the defendant and Gray in the Suksdorff Apartments in the town of Winston, which is located a short distance north of Dillard. Bouey testified:

"A  I asked these fellows where they had been the preceding night.

"Q  Who answered you?
"A  They both were sitting there and part of them answered one part of it and part answered the rest of it. Both of them related to me as to where they had been the preceding night.

"Q  Where did they tell you they had been?
"A  They told me they had been down to the Roseburg Lumber Co. to seek employment.

"Q  Did you discuss with them whether or not they had seen Officer Scott?
"A  Yes, I did.

"Q  What did they tell you?
"A  They told me they had been talked to by Officer Scott in the vicinity of Dillard, Oregon; just at the north edge of Dillard, Oregon."

■■ We think that this evidence is sufficient to support the jury's verdict. Two persons robbed the Flying A gas station at three o'clock in the morning. An hour and a half later the defendant, in the company of Mickey Gray, identified as one of the robbers, was walking in a northerly direction along a highway some six or seven miles south of the gas station. The stolen automobile used by the robbers had then been aban-

doned on a side road a little more than a mile south and west of where the men were stopped and questioned by Officer Scott. The revolver which Mickey Gray carried when he held up the service station attendant and $150 of the loot were found within a few hundred feet of where the men then were. Mickey Gray gave the officer a false name. The men told him they were "coming back from the mill." They were, it is true, coming from the direction of the mill, but also from the direction of the abandoned car. The car, it will be recalled, had been parked at the mill when it was stolen. Both men when placed under arrest later in the day had money in their possession which could reasonably be found to be part of the stolen money. It is true that the bills were not identified as the particular bills taken from the cash register. That would be rarely possible in any case where the owner had not recorded the numbers of the bills, but there are numerous cases in which precise identification of money is not required. As the court said in *Commonwealth v. O'Neil,* 169 Mass 394, 397, 48 NE 134: "The bills were not identified by ear-marks, but they corresponded in denomination, and such a likeness is often proper to be considered in connection with other incriminating evidence." See also, *Commonwealth v. Williams,* 171 Mass 461, 464, 50 NE 1035; *Leonard v. State,* 115 Ala 80, 83, 22 S 564; *Allen v. State,* 26 Ala App 218, 220, 155 S 894; *People v. Sullivan,* 144 Cal 471, 472, 77 P 1000; *Brandt v. State,* 129 Tex Crim Rep 558, 560, 90 SW2d 263. This evidence takes on additional significance when it is considered that the amount of currency carried by the defendant and Gray, added to that found hidden by the roadside at Dillard, and that found in the abandoned car comes within $20 of the amount stolen from

the gas station. The rule regarding the possession of recently stolen property applies, *State v. Downing,* 185 Or 689, 205 P2d 141. The jury were not bound to accept the exculpatory statement of the defendant—and that of Gray—that they had been to the Roseburg Lumber Company mill to seek employment. The jury could have believed that the two had been together, as they said, and that they were together when the gas station was robbed.

An assignment of error is directed to the court's refusal to strike out a large portion of the evidence in the case. We do not deem it necessary to discuss this motion specifically. It is sufficient to quote the following statement of Mr. Justice Holmes relative to circumstantial evidence in *Commonwealth v. Mulrey,* 170 Mass 103, 110, 49 NE 91:

> "But it is not necessary that every piece of evidence admitted should be sufficient by itself to prove the crime. Evidence which would be colorless if it stood alone may get a new complexion from other facts which are proved, and, in turn, may corroborate the conclusion which would be drawn from the other facts."

The judgment is affirmed.