Argued April 6, affirmed April 26, 1967

# STATE OF OREGON, *Respondent, v.* WAYNE KELLEY HANCOCK, *Appellant.*

426 P. 2d 872

*Jack E. Collier,* Portland, argued the cause and filed the brief for appellant.

*Jacob B. Tanzer,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, LUSK and FORT, Justices.

FORT, J. (Pro Tempore).

Defendant, Wayne Kelley Hancock, appeals from a judgment of conviction of the crime of assault and robbery being armed with a dangerous weapon, as did his brother and co-defendant, Ronnie Wagner Hancock. See *State v. Hancock,* 245 Or 240, 421 P2d 687 (1966). The brothers were tried separately though charged jointly in the indictment. Three assignments of error

are presented. Two relate to the admissibility of certain exhibits. For a proper understanding of each a summary of relevant portions of the evidence is necessary.

The crime involved the holdup and robbery of a market. The robbers in the course of the holdup, in addition to taking money and checks from the cash register at gun point, also rifled the purses of the clerk on duty and a lady customer, and, the jury could reasonably infer, took the wallets from two male customers who also came into the store during the holdup. One of these customers, named Mike Fahey, was known and identified by the clerk on duty.

The robbers stuffed the stolen cash, checks and other property, including the billfolds and coin purses, into a cash register cover and left the store. In the parking lot outside the store they commandeered at gun point a car occupied by two seventeen-year-old girls and compelled the girls to drive them about Portland and its environs for nearly three hours. While so engaged they ordered one of the girls to separate the cash from the checks contained in the cash register cover. She did so. The robbers kept the currency. The precise amount of money was not shown. While driving in the vicinity of the St. John's Bridge area one of the robbers threw a wallet out of the car window.

Promptly after being released by the robbers, the girls notified the police and related to them the foregoing activities. They accompanied the police to the St. John's Bridge area the following day and there a wallet was found in the vicinity where the wallet was thrown from the car. Some of its contents were scattered alongside the road. It contained the driver's license and other identification of Michael Fahey. Mr. Fahey was not called as a witness at the trial.

The robbery occurred about 8:15 p.m. The defendants were with the girls continuously until about 11:00 p.m. The police after being called to Tiny's Cafe near Portland at 3:00 a.m. to investigate a disturbance, arrested both defendants outside the cafe for being drunk on the street. At that time this defendant was searched and a large roll of currency containing $163 was found on his person. The roll included 38 one-dollar bills.

At the trial both the Fahey wallet and the currency taken from Wayne Kelley Hancock were introduced into evidence as exhibits over timely objection. The ruling as to each is assigned as error. We will consider each separately.

■ The rule is well-established that the admissibility of demonstrative evidence is generally a matter within the discretion of the trial court.[1]

In criminal cases:

"Objects may be admitted in evidence which the defendant had thrown away, or which had been thrown from the room or building, or the vehicle in which the defendant was present."[2]

■ The defendant contends here that the failure of the state to call Mike Fahey to testify to the taking of his wallet by the robbers and to the identification of the wallet found near the bridge renders the exhibit inadmissible. The defendant is not here charged with robbing Fahey. The wallet here introduced tended to corroborate the evidence of the girls, both of whom identified the defendant as one of the two robbers,

---

[1] Rich v. Cooper, 234 Or 300 at 311-12, 380 P2d 613; 32 CJS 758, Evidence § 602.

[2] 2 Wharton's Criminal Evidence (12th ed) 119, § 679 (Supp 1966).

regarding both the flight of the defendants with them following the crime charged, and the fact that one of them threw out a wallet in the vicinity of St. John's bridge. In addition it tended to corroborate the testimony of the store clerk, who also identified the defendant as one of the two robbers. She testified that Mike Fahey, who was personally known to her, came into the store during the holdup and was himself compelled by the robbers at gun point to lie down, first in the store and later beside her in the store cooler. No error was committed in admitting the wallet into evidence.

■ With respect to the currency found upon him at the time of arrest, defendant contends since there was no showing of how much money was taken in the robbery, it was error to receive the $163 as an exhibit. He contends an insufficient foundation was laid. No objection was made by the defendant to the testimony of the police officers who searched him and found the money, or to their testifying to the specific amount of $163 they found upon him. The objection went only to the receipt of the money itself as an exhibit.

In this case the defense of the defendant was alibi. He denied any involvement at all in the robbery. He denied knowing or being with the girls in their car at any time. In addition he had offered evidence in his case in chief that he was not at the time of the crime impecunious and that earlier on the evening in question he had "well over $100.00" in his pocket. Both of the challenged exhibits, though identified during the state's case in chief, were offered and received during rebuttal after defendant had introduced his alibi evidence.

We agree with the defendant that the currency here

is not admissible under the theory of prior impecuniosity,[9] for no such showing was here made, nor because the specific bills found on the defendant could be individually identified as a part of the stolen money through serial number, special marking, unique condition, or the like. It was, however, admissible because the currency is itself a chattel and there was direct evidence connecting the defendant with it, both while he was in the presence of the girls in the car as well as when with the victims in the market. His possession of the $163 in currency when arrested some four hours after leaving the girls was a significant circumstance in the case. 1 Wharton's Criminal Evidence (12th ed) 411, § 204, states:

"When money is found in the possession of the defendant, it is generally held that it is unnecessary to identify the bills of money as having been the bills which had formerly been in the possession of the victim of the crime, or to trace the source of such money."[10]

In *State v. Sack*, 210 Or 552 at 581, 300 P2d 427 (1957), we stated:

"*  *  *  Circumstantial evidence is not limited to proof in the first instance of certainty. Evidence is relevant and admissible if it shows possibility, capacity, probability, or certainty. The fact that proof beyond reasonable doubt is the ultimate requirement does not militate against the value of individual items of evidence which rise no higher than proof of the possibility or probability.  *  *  *"

---

[9] 91 ALR2d 1046 at 1049.

[10] Self v. United States, 249 F2d 32 (1957); People v. Falls, 150 Cal App2d 554, 310 P2d 484 (1957); State v. Cofer, 73 Ida 181, 249 P2d 197 (1952); State v. Paar, 64 Wash2d 921, 395 P2d 196 (1964); 91 ALR2d 1046 at 1061-1065; 77 CJS 491, Robbery § 46.

In *State v. Hunter,* 235 Or 308 at 314, 384 P2d 983 (1963), we said:

> "* * * It is sufficient to quote the following statement of Mr. Justice Holmes relative to circumstantial evidence in *Commonwealth v. Mulrey,* 170 Mass 103, 110, 49 NE 91:
>
> > " 'But it is not necessary that every piece of evidence admitted should be sufficient by itself to prove the crime. Evidence which would be colorless if it stood alone may get a new complexion from other facts which are proved, and, in turn, may corroborate the conclusion which would be drawn from the other facts.' "

As with the wallet, here, too, it was competent for the state to offer evidence which tended to corroborate the testimony of the girls that it was indeed the defendant and his brother, not two other men, who, while fleeing, abducted them at the very scene of the crime, having with them also at that time the fruits of the robbery. We think this evidence also tended to corroborate the testimony of the girls relating not only to the separation of the stolen moneys from the checks, purses and wallets contained in the cash register cover, but the carrying off of the currency by the defendants when they left the girls' car shortly before 11:00 p.m. We think the testimony of the girls, together with that of the victims of the robbery, laid a sufficient foundation to warrant the admission of the currency as well as the wallet. The weight to be accorded to each exhibit was for the jury.

■ Following the verdict and the entry of judgment thereon, defendant filed a motion for a new trial alleging "irregularity in the proceedings" by which "defendant was prevented from having a fair trial." Extensive testimony was taken by the court prior to its

ruling. The motion was denied. The third assignment of error challenges that ruling. Referring to the trial, the motion asserts "that the defendant was under the influence of tranquilizers which impaired his mental functions and ability to confront his accusers." Both while in jail awaiting trial and during the trial itself, the defendant, pursuant to examination by and prescription of a duly licensed physician and qualified psychiatrist, was regularly receiving medication in the form of tranquilizers. The defendant concedes the tranquilizers were administered to him with his full knowledge and without any objection from him.

The state concedes and we recognize that:

"Every accused has a fundamental right to be present at his trial and to confront the witnesses against him, * * *." 83 ALR2d 1067 at 1069.

Obviously this means more than his physical presence at the trial. It includes the right to be present in such a physical and mental condition as to be able to comprehend the nature of the proceedings and to assist in his own defense.

■ Thus, if during his trial or any part thereof this defendant because of the narcotic effect of the tranquilizers being administered to him was deprived of his ability in the absence thereof to comprehend the nature of the proceedings and to assist in his own defense, then it follows that his conviction cannot stand.[9]

The transcript of the evidence taken in connection with the motion for the new trial reveals that in January, 1966, the defendant by order of the court in connection with some six charges pending against him, including the instant charge, was sent for examination

---

[9] State v. Murphy, 56 Wash2d 761, 355 P2d 323 (1960).

to the Oregon State Hospital to ascertain whether or not he could assist in his own defense. The diagnosis by the hospital disposition board made following extensive examinations was: "psychopathic personality disturbance, disassociation reaction." In addition it was determined that the defendant would upon occasion go into rages. When under emotional stress his blood pressure became "markedly elevated."

Because of these and other factors the drug, valium, a mild tranquilizer, was prescribed for and administered to him. The hospital disposition board concluded that he was able to assist in his own defense and he was returned to the Multnomah County Jail to await trial.

While there, as shown by the ledger record of medication maintained for prisoners at the jail, and from the testimony of the Multnomah County Health Department employee employed to administer and supervise all medication given at the jail where the defendant was confined, valium was administered to him as prescribed. The dosage prescribed was one ten-milligram tablet four times a day. The evidence shows the quantity and time of administration of every dose beginning with a week before and continuing to the conclusion of the trial. The medical testimony is uncontradicted that valium was administered to the defendant to assist him in handling his emotions; that as administered it did not affect his ability to communicate with other people; that it did not affect his memory in any way; and that from the dosage prescribed and administered there was no impairment of his mental function. The record further shows that the defendant actively participated in his trial. He testified at length himself. He advised and cooperated with his own experienced counsel in arranging for

and calling some five witnesses in his own behalf. He himself during the trial asked for a delay to communicate with his attorney and with witnesses, which was allowed by the court.

■ As a result of the careful and thorough inquiry conducted by the trial court it concluded that the drug, valium, as administered to the defendant before and during the trial "did not impair the defendant's mental function in any way during the trial" and that accordingly "there was no irregularity in the proceedings which prevented the defendant from having a fair trial." There was no abuse of discretion in so holding. This record reveals that the defendant was accorded an eminently fair and impartial trial.

The judgment is affirmed.