Bernard Tomson, J.
On September 10, 1968 the defendant was indicted for the crime of murder. On September 18, 1968 he was arraigned on the charge and entered a plea of not guilty. On July 29, 1969, a report which found the defendant competent to stand trial was confirmed. A new report was ordered which also found him competent. However, on July 24, 1970, the Honorable David Gibbons, after a hearing, found the defendant incompetent and committed him to the custody of the Commissioner of Mental Hygiene. On December 5, 1973, an order of retention (CPL art 730) was signed by the Honorable Frank X. Altimari. On June 24, 1974 the defendant, having been found to be "no longer an incapacitated person” was discharged from Hoch Psychiatric Center and returned to the custody of the Nassau County Sheriff’s office for trial. His condition in the hospital report was stated then to be "improved” and it was noted that the "patient, during the last weeks of hospitalization, like during all of his stay in hospital, remained in good contact without overt signs of psychosis”. At the next court appearance a new CPL 730.30 examination and report was ordered.
The two court-appointed psychiatrists found the defendant competent to stand trial. The defendant contested this finding and consequently a hearing was held on May 27, 1975. (CPL 730.30, subd 2.) At the hearing live testimony was received from a defense psychiatrist who had examined the defendant and found him not competent to stand trial. The parties stipulated that, if called, the prosecution psychiatrists who found the defendant competent would testify to the facts and opinions contained in their most recent reports. Records arising out of the defendant’s prior periods of institutional care were also submitted to the court for consideration.
This court has, on a prior occasion, discussed at length the topic of competency to stand trial. (People v Valentino, 78 Misc 2d 678.) To that discussion this case adds ancillary considerations. The defendant suffers from the physical effects of epilepsy, left hemiparesis involving the left arm and leg, chronic alcoholism, cirrhosis of the liver and hypoglycemia. His psychiatric history shows a dull normal I.Q., fugue states and a schizoid personality. Because of these physical and *1092 mental conditions the defendant is under medication and receives daily doses of dilantin and phenobarbital as well as a peritrate mixture! Of these medications the former two appear to have a dulling effect upon one’s awareness. Denial of these medications to the defendant would bring on epileptic seizures probably within 24 hours. In combination with the defendant’s other neurological disorders, particularly his susceptibility to fugue states, such seizures could render him incapable of the rudimentary functions one must perform in order to be competent to stand trial.
The defense argues that the susceptibility to fugue states renders the defendant incompetent to stand trial. "Fugue” is a term borrowed from music where it describes a composition made up of intricately interwoven but disparate themes. (Webster’s Int. Dictionary [2d ed].) In the psychological context, a "fugue state” is a state of mental confusion produced by an influx of competing stimuli or thoughts. Its behavioral manifestations may be hyperactivity or a contrary state externally resembling daydreaming. Just as the former manifestation is apparent to even the untrained eye, so too, the latter is detectable by an observant person familiar with the "fugue state”.
Under the CPL to be competent to stand trial one must be able to understand the proceedings against him and to assist in his own defense. (CPL 730.10, subd 1.) The Court of Appeals has, of late, adopted phraseology such as assist counsel "with a modicum of intelligence” (emphasis supplied) (see People v Francabandera, 33 NY2d 429, 436) and the "defendant [must] be able to comprehend his predicament and be capable of participating rationally in his own defense.” (People v Jordan, 35 NY2d 577, 581; People v Laudati, 35 NY2d 696.) The subtle shift in emphasis evidenced by this language further establishes the trend, noted in this court’s earlier decision, toward being less exacting as to the degree of capacity a person need possess in order to be adjudged competent to stand trial. In light of this trend, if precautions are taken to detect slippage into fugue states, the defendant’s susceptibility to such phenomena should render him no less competent to stand trial than an individual with a tendency to daydream.
The defendant’s need for medication poses a more substantial question. The defense contends that a defendant must be competent, independent of medication, before he can be put on trial. The People argue that synthetic or pharmacologically *1093 induced competency is sufficient. No other New York court appears to have addressed this issue. Nevertheless, other foreign jurisdictions in which the question has arisen have found synthetic competency to suffice. (State v Potter, 285 NC 238; State v Hampton, 253 La 399; People v Dalfonso, 24 Ill App 3d 748; State v Rand, 20 Ohio Misc 98, 247 NE2d 342 [Ohio]; but see Group for the Advancement of Psychiatry, Misuse of Psychiatry in the Criminal Courts; Competency to Stand Trial, p 901.) Any other holding would constitute an atavistic repudiation of the advances made in the treatment of the mentally ill during the past two decades.
While it is here held that synthetic competency is sufficient to require a defendant to stand trial, there must be distinguished the situation in which a defendant asserts the defense of insanity at the time of the criminal act, and has his behavior modified by drugs during trial and perhaps even during his testimony on the witness stand. The latter case poses added problems not here considered where the defendant’s assertion of continuing lunacy is apparently contradicted by his drug-induced calm and composure. (See State v Maryott, 6 Wash App 96; State v Murphy, 56 Wash 2d 761; Group for the Advancement of Psychiatry, Misuse of Psychiatry in the Criminal Courts; Competency to Stand Trial, p 903. But, quaere whether the behavior of a nontestifying defendant at trial is to be considered by a jury and whether, if a defendant does testify, his behavior, as affected by drugs, may not be adequately explained by other testimony.)
Finally, the defendant urges that the mental clouding comparable to intoxication which is a side effect of the medication he is under renders him incompetent to stand trial. There is no question but that such side effects, if of sufficient degree, could amount to a denial of the defendant’s right to be present at and assist in his own defense. (See State v Maryott, supra.) Psychological shackles and gags can be as effective as material ones. (See, generally, Illinois v Allen, 397 US 337; Blackburn v Alabama, 361 US 199; People v Palermo, 32 NY2d 222.) Nevertheless, on this record it is here determined that, despite the side effects of the medication he is receiving, the defendant is oriented as to time and place; able to perceive, recall and relate; possesses a rudimentary understanding of the trial process and the roles of the Judge, jury, prosecutor and defense attorney; can establish a working relationship with his attorney; has sufficient intelligence and judgment to listen *1094 to the advice of counsel and appreciate that one course of conduct may be more beneficial than another; and, with proper precautions, should be able to withstand the stresses of trial without suffering a serious, prolonged or permanent breakdown. (See People v Valentino, 78 Misc 2d 678, supra.)
The defendant is competent to stand trial. His motion to controvert the findings of the psychiatrists is denied.