**STATE of Tennessee, Appellant,**

v.

**William Earl STACY, Appellee.**

Court of Criminal Appeals of Tennessee.

Aug. 4, 1977.

Certiorari Denied by Supreme Court Oct. 11, 1977.

Brooks McLemore, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., B. Rex McGee, Asst. Dist. Atty. Gen., Knoxville, for appellant.

Walter C. Kurtz, Legal Aid Clinic, Knoxville, for appellee.

OPINION

DUNCAN, Judge.

The appellant-State appeals from a ruling by the Knox County Criminal Court that the appellee, William Earl Stacy, is mentally incompetent to stand trial. At the present time, Stacy has several indictments pending in the Knox County Criminal Court, including one charging first degree murder. On October 4, 1976, Stacy,

through court appointed counsel, filed a motion requesting the trial court to find him mentally incompetent to stand trial on the pending indictments. A hearing on this motion was held pursuant to T.C.A. §§ 33–604 and 33–708, and on October 5, the trial court ruled that Stacy was mentally incompetent to stand trial. In this appeal, the State argues that the expert testimony adduced at the hearing shows that Stacy is mentally competent to stand trial.

The issue to be decided is whether tranquilizing medication can be used to render a person competent to stand trial when, without the medication, that person would be mentally incompetent to stand trial under prevailing standards. We hold that such medication can be so utilized.

 It is a fundamental principle of our system of criminal justice that one who is charged with a crime cannot be required to plead to the indictment, be put on trial, convicted, sentenced, or punished while insane or otherwise mentally incompetent. In a hearing to determine if a defendant is presently competent to stand trial, the inquiry does not focus on the defendant's guilt or innocence, or even his mental condition at the time of the crime. Rather, a competency hearing is a very narrow inquiry aimed at determining whether one who is charged with a criminal offense is presently competent to stand trial. In this State, a defendant is considered competent to stand trial if "he has mind and discretion which would enable him to appreciate the charges against him, the proceedings thereon, and enable him to make a proper defense." *Jordan v. State*, 124 Tenn. 81, 88, 135 S.W. 327, 329 (1911).

In *Mackey v. State*, 537 S.W.2d 704 (Tenn.Cr.App.1975), this Court recently restated the competency standard as follows:

Both Tennessee decisions and the federal constitution prohibit the trial of a defendant whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing his defense. (citations omitted). 537 S.W.2d at 707.

We find from this record that the appellee Stacy meets the foregoing tests of present mental competency so long as he is properly medicated with the tranquilizing drug, Haldol. It is equally clear that without the aid of this medication, he is not mentally competent to stand trial.

The only witness to testify at the competency hearing was Dr. Adolf F. Siegmann, a psychiatrist at the Central State Psychiatric Hospital. He testified that Stacy had undergone several examinations at the hospital and was diagnosed as suffering from a mental illness known to the psychiatric profession as "schizophrenia, chronic, undifferentiated type." Dr. Siegmann described Stacy's medication as follows:

At the time of his return through now, he has been on Haldol, twenty milligrams twice a day, and he has also been on Cogentin, two milligrams three times a day. The Haldol is a drug out of the group of tranquilizing anti-psychotic medication, most effective, but producing side reaction in the body muscle tones, what we would see in old people, what is called (indiscernible), extreme rigidity, and Cogentin is the antidote against the side reaction.

In describing the effect of this medication, Dr. Siegmann stated:

In general, these chemical entities which change in the brain, in connection within the nervous system, which, to say in limited terms, puts a damper on certain processes which help people to experience less distress, anxiety or panic, or depression, which, therefore, helps them to stay more composed, more aware truly of themselves and of the world and thereby able to function more appropriately to their own benefit.

Dr. Siegmann further testified that because of the medication, Stacy had for the prior four months been able to function well in the confines of the hospital, had "participated in many activities," worked "regularly and quite diligently" in the kitchen, his thinking was "organized," and he had "not shown any overt kind of psychotic behavior now since the end of May."

Finally, Dr. Siegmann stated that it was his opinion that Stacy, while under medication, would understand the nature of the legal proceedings with which he would be involved and would be able to advise with counsel and participate in his own defense, but that without medication, Stacy's ability to do these things would be impaired and he would not meet competency standards. In short, Dr. Siegmann's testimony brings the issue into sharp focus. With medication, Stacy is competent to stand trial; without medication, he is incompetent to stand trial.

The issue in this case is one of first impression in Tennessee, but it has been addressed, either directly or as a collateral issue, in several other jurisdictions. *Focusing on the narrow issue of competency to stand trial,* we find no cases which expressly prohibit the use of tranquilizing medication to render a person competent to stand trial. On the other hand, there are several cases which have either expressly or impliedly approved the use of tranquilizing medication to induce "chemical competency," or "synthetic sanity" as it has sometimes been characterized.

Our review of the case law in this area reveals that the cases which have considered this issue, and the far-reaching implications inherent in it, generally fall into two categories: first (I), cases arising from pre-trial competency hearings in which the sole issue is the propriety of giving tranquilizing medication to a defendant to render him competent to stand trial; second (II), cases involving either direct appeals of convictions or post conviction proceedings in which the issue of "synthetic sanity" or "chemical competency" has been considered along with other issues developed at trial.

I

In *State v. Rand,* 20 Ohio Misc. 98, 247 N.E.2d 342 (Ct.Com.Pl.1969), the court held that a defendant facing a charge of first degree murder was competent to stand trial after it was shown that he had been properly administered tranquilizing drugs—Thorazine and Stelazine—which enabled him to communicate with his counsel in a reasonable and rational manner regarding the preparation and conduct of his defense. See also: 31 Ohio St.L.J. 617 (1970). Some of the expert testimony set out in *Rand* closely parallels Dr. Siegmann's expert testimony regarding Stacy's conduct with and without medication. The psychiatrist in *Rand* related how that defendant acted with and without drugs:

. . . Prior to stopping medication, he was assigned to clean at least ten rooms, keep them in order, make beds, he was to clean the floor and everything. He was a very good worker, cooperative, nothing wrong with him.

Then after his medication was stopped, he started to get too slow in his work performance, and finally he could not do his work in due time.

. . . . .

Then, gradually, his mental condition deteriorated. He would not reply to the answers. He will lay day and night on his mattress. He will urinate on the floor. Sometimes he will take food and other times he will not. He will not answer. And his mental condition is very bad.

*He was a very good patient, cooperative, very good worker when on medication. Without medication he breaks down.* (emphasis added) 247 N.E.2d at 346.

In the present case, Dr. Siegmann testified that before Stacy was placed on medication, he would "skip meals," experienced "difficulty in sleeping," saw "ghosts," and "voided on the floor for no apparent reason." However, after Stacy had been on medication for four months, he was able to work near complex and dangerous machinery and establish more normal relationships with fellow patients and the staff. Thus, when not taking medication, both Stacy and Rand exhibited similar symptoms and were similarly situated, and in that condition, under the prevailing competency standards, both were incompetent to stand trial. With medication, however, both could meet the standards for present mental competency.

The facts and issue in the present case are very similar to the problem which confronted the Louisiana Supreme Court in *State v. Hampton*, 253 La. 399, 218 So.2d 311 (1969). There the defendant was examined and found to be suffering from chronic paranoid schizophrenia, and upon a competency hearing she was found to be incompetent and was committed to a mental hospital for care and treatment. Following a period of treatment, the hospital reported that she had regained her mental competency, and a new hearing was held at which it was shown that her psychotic symptoms were in remission due to the use of a moderately high dosage of the tranquilizer Thorazine. The proof further showed that if the dosage was discontinued, she would probably have a relapse. The trial judge found from the testimony that she was only "synthetically sane" and ruled that she was still incompetent. The Louisiana Supreme Court reversed the trial judge and found the defendant competent to stand trial. The court said:

> The members of the sanity commission were the only witnesses to testify at the hearing. In their opinion, the defendant can understand the nature of the proceedings and assist in her defense. The record contains no evidence to the contrary. The psychotic symptoms are in remission. *That this condition has resulted from the use of a prescribed tranquilizing medication is of no legal consequence.* Under the codal test, the court looks to the condition only. It does not look beyond existing competency and erase improvement produced by medical science. See Moseley, The Case of the Tranquilized Defendant, 28 La.L.Rev. 265 and Scrignar, Tranquilizers and the Psychotic Defendant, 53 A.B.A.J. 43. (emphasis added). 218 So.2d at 312.

In *People v. Dalfonso*, 24 Ill.App.3d 748, 321 N.E.2d 379 (1974), the court was faced with the same issue that had confronted the Louisiana Supreme Court in *Hampton*, supra, but in *Dalfonso* it was the defendant, not the State, who was appealing a ruling that he was incompetent to stand trial. Following precedent, the Illinois court adopted the reasoning of *Hampton v. State*, supra, and held that the defendant was competent to stand trial even though his continued competency might depend on taking the prescribed tranquilizer, Haldol; the same tranquilizer which the appellee Stacy is receiving. In support of its ruling, the Illinois court cited *State v. Rand*, supra; *State v. Hancock*, 247 Or. 21, 426 P.2d 872 (1967), (discussed below); and *State v. Potter*, 285 N.C. 238, 204 S.E.2d 649 (1974), (discussed below).

A New York court was faced with the issue of "drug induced competency" in *People v. Parsons*, 82 Misc.2d 1090, 371 N.Y. S.2d 840 (1975). In that case, a defendant charged with murder was initially found competent, then found incompetent, and finally once more found competent to stand trial. He moved to controvert the psychiatrists' latest findings that he was competent to stand trial, alleging in part that he had to be competent independent of medication before he could be put on trial. The court agreed with the State's argument that "synthetic or pharmacologically induced competency is sufficient," and cited *Potter, Hampton, Rand* and *Dalfonso*, supra. In so holding, the court stated, "Any other holding would constitute an atavistic repudiation of the advances made in the treatment of the mentally ill during the past two decades." 371 N.Y.S.2d at 842.

Thus, these cases involving pre-trial competency hearings wherein the specific issue of using tranquilizing medication to render a defendant competent to stand trial has been considered, have uniformly held that such a practice is permissible.

## II

The second category of cases which have considered the issue of "synthetic sanity" or "chemical competency" consists of direct appeals of convictions or post conviction proceedings. The results reached in those cases have generally been consistent with the holdings of the four cases which arose from pre-trial competency hearings.

In *State v. Arndt,* 1 Or.App. 608, 465 P.2d 486 (1970), a case involving a direct appeal from rape and robbery convictions, the court held that where massive doses of Thorazine did not impair the defendant's ability to understand or assist in his defense, he was competent to stand trial and his convictions were affirmed.

Prior to the *Arndt* decision, the Oregon Supreme Court had before it a case for consideration where a defendant, before and during his trial, was under the influence of a tranquilizer (Valium) which assisted him in controlling his emotions. *State v. Hancock,* 247 Or. 21, 426 P.2d 872 (1967). While the *Hancock* appeal followed the defendant's trial and conviction, and did not involve the preliminary issue of competency to stand trial, the Oregon Supreme Court affirmed the trial judge's findings that the defendant's medication had not affected his mental functions, that he had been able to actively participate in his defense, and that he had received a fair trial.

In *State v. Potter,* 285 N.C. 238, 204 S.E.2d 649 (1974), the North Carolina Supreme Court examined the case of a defendant who maintained that it was not proper to try him because his competency had been induced by the use of tranquilizers, one of them being Haldol. In *Potter,* the defendant raised the question of insanity at the time of the crime as well as the question of his competency to stand trial. After reviewing some of the same authorities which we have discussed in the present opinion, the court found no reason why the defendant could not be tried even though his competency had been induced by tranquilizing medication.

In *State v. Plaisance,* 252 La. 212, 210 So.2d 323 (1968), cert. denied, 393 U.S. 1005, 89 S.Ct. 496, 21 L.Ed.2d 470 (1968), a case which was the forerunner of *State v. Hampton,* supra, the Louisiana Supreme Court had before it a direct appeal from a rape conviction. In one of the assignments of error, the defendant maintained that although at the time of trial he had been able to assist in his defense, this ability had been brought about by prescribed tranquilizing medication, and without the tranquilizers he would not have been competent to stand trial. The Louisiana court did not find this argument meritorious and brushed it aside, stating:

> [D]efendant is presently sane for he is able to understand the proceedings against him and assist in his defense being in a state of complete remission and will remain such by continued use of the prescribed medication. 210 So.2d at 325.

Counsel for the appellee Stacy insists that it is improper to induce competency by medication and cites in his brief the cases of *In re Pray,* 133 Vt. 253, 336 A.2d 174 (1975), and *State v. Maryott,* 6 Wash.App. 96, 492 P.2d 239 (1971).

*In re Pray,* supra, involved a post conviction proceeding following a conviction of first degree murder and affirmance of that conviction on direct appeal. Evidence introduced at the post conviction hearing indicated that the defendant had been heavily sedated during his trial, and this fact had not been disclosed to the jury. The trial court denied relief on the petition, but the Vermont Supreme Court set aside the conviction and remanded the case for a new trial, holding that because the defense of insanity had been interposed at trial, the jury should have been informed that Pray was under sedative medication during the trial. The court then stated:

> In fact, it may well have been necessary, in view of the critical nature of the issue, to expose the jury to the undrugged, unsedated Gary Pray, at least, insofar as safety and trial progress might permit. 336 A.2d at 177.

It should be noted, however, that the court did not hold that the defendant was incompetent to stand trial because of his medication. In fact, it inferentially held that he was competent in spite of his medication. Regarding the defendant's competency, the court said:

> The question must arise as to the validity of a competency that rests on heavy medication. *Yet we must agree with the lower court that the evidence as to awareness and ability to communicate to*

*his counsel is sufficient to support the finding of competency.* (emphasis added) 336 A.2d at 177.

We think that a fair reading of *Pray* indicates that the Vermont Supreme Court did not base its decision on the defendant's drugged condition, per se. Rather, it appears that the court based its decision on the fact that the jury had not been informed of the defendant's condition.

In *State v. Maryott*, supra, a direct appeal from convictions of robbery and assault, the Washington Court of Appeals held that the State could not, over the objection of the defendant, administer tranquilizing drugs to him which would affect his mental and/or physical ability at the time of trial. But here again the court related its findings to the question of mental responsibility for the crime, and not to the question of mental competency to stand trial. In fact, on this latter question the court found that the defendant was competent to stand trial despite his medicated condition. The court said: "The courts have not found the presence of drugs per se to render a defendant incompetent." 492 P.2d at 244. (citing *State v. Arndt*, supra).

In *Maryott*, the court relied very heavily on *State v. Murphy*, 56 Wash.2d 761, 355 P.2d 323 (1960). In *Murphy*, the Washington Supreme Court held that where tranquilizer pills had been given to the defendant by a medical trusty under the supervision of the jail physician shortly before the defendant testified, the defendant was entitled to a new trial because it appeared that his attitude, appearance, and demeanor may have been influenced by drugs, and that his appearance and attitude may have influenced the jury in the death penalty imposed. However, the court went on to say:

We do not intend to suggest that a new trial must be granted in every criminal case—or even in every capital case— where the appearance of the accused before the jury is marred by some mental, physical, or emotional impairment, regardless of the nature of the impairment, or the means by which it was brought

about. Each case of this type must be decided on its own facts. 355 P.2d at 327.

We note that the defendant's competency to stand trial was not an issue in *Murphy*. And in *Pray* and *Maryott*, the court held either directly or inferentially that the defendants were competent to stand trial despite their medicated conditions.

Although *Pray, Murphy*, and *Maryott* held that the defendants were entitled to relief because they had been tried while medicated, those cases must be read in light of the facts and developments that occurred at the trial of those cases, and even those jurisdictions, by virtue of the language used in those cases, could well sustain convictions where the facts and developments at other trials were different.

Thus, the authorities abundantly support the proposition that a defendant can be considered competent to stand trial even though such competency has been induced by tranquilizing medication.

We point out that we are not involved at this pre-trial stage with the issues of whether the appellee's due process rights or other rights would or would not be violated by requiring him to stand trial while taking tranquilizing medication. A resolution of those and other issues will have to await the trial of this case on its merits and could well depend upon the nature of the defense or defenses interposed, and the other developments that will take place in those trial proceedings. We might note that in *State v. Jojola*, 89 N.M. 489, 553 P.2d 1296 (N.M. App.1976), the defendant complained of a due process violation by being required to stand trial while under the influence of Thorazine. The New Mexico Court of Appeals rejected this contention, upheld the defendant's conviction, and ruled that the defendant was not denied due process by being tried while medicated with Thorazine.

█ We find nothing offensive in allowing a defendant's competency to stand trial to be induced by the use of tranquilizing medication. In this modern age, the administering of drugs under proper medical supervision has effectively restored many

mentally ill citizens to a useful life in which they can function as normally as other citizens not so impaired. See: Buschman and Reed, Tranquilizers and Competency to Stand Trial, 54 A.B.A.J. 284 (1968). Dr. Siegmann amply illustrated this in his testimony by saying:

I might be helpful to the Court by indicating that today, in this nation, there are hundreds of thousands of people, who are maintained with the help of drugs, functioning normally in our society, which is a big advantage, which is not a cure, but without which our mental hospitals would probably be as full as they were thirty years ago.

An excellent article in the Journal of Forensic Sciences discusses the advances made in the treatment of mentally ill persons by the use of tranquilizing medication, and specifically addresses the issue of treating a defendant with tranquilizing medication in order to render him competent to stand trial. The article concludes by stating:

Psychopharmaceutical restoration to sanity for the mentally incompetent patient-defendant is a medical reality for the overwhelming majority of such individuals. The courts have recognized this advancement of science in their decisions. Although the judicial system should continue to be concerned with untoward influence of drugs upon the defendant's mental competency to stand trial, nevertheless, many courts have recognized the advances in psychiatric treatment in their decisions on present sanity. The trend in trial courts is to require the drug-influenced normalized defendant to stand trial as early as possible even though he still requires continuing psychotropic medication to retain his mental competency to stand trial.

If the mentally ill patient-defendant demonstrates adequate sustained improvement in mental impairment and can be completely taken off drugs, so much the better; but the defendant need not be taken off his normalizing drugs in order to be returned to stand trial.

Haddox and Pollack, Psychopharmaceutical Restoration to Present Sanity (Mental Competency to Stand Trial), 17 J.For.Sci. 568, 576 (1972).

Certainly, if a defendant is not guilty of an offense by reason of past insanity or otherwise, then it is in his best interests for the matter to be expeditiously litigated. Likewise, if his defenses are not meritorious, then society's best interests, represented by the State, are served by a speedy resolution of the matter. In this connection, there is some merit to the State's insistence that unless it is allowed to proceed with the trial of the accused, then by virtue of the holding in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), the accused may ultimately be set free without the issue of his guilt or innocence of the crimes charged ever being resolved.

In *Jackson*, the defendant was found to be incompetent to stand trial and was committed to the state mental hospital until such time as he could be certified sane and competent to stand trial. The Indiana criminal procedure standards for commitment were not the same as the civil commitment procedure standards. Jackson maintained that since his mental condition would never improve, he was, in effect, being given a life sentence. The United States Supreme Court held that a state could not indefinitely commit an individual simply because he was incompetent to be tried. The Supreme Court concluded:

We hold, consequently, that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. 92 S.Ct. at 1859.

In the present case, according to the testimony adduced at the hearing, the appellee Stacy, in the absence of medication, will in all likelihood never be competent to stand trial, and ultimately, under the dictates of the *Jackson* case, he will have to be civilly committed. Once he is in that status, then in the discretion of the hospital authorities, he could well be released back into society without the issue of his guilt or innocence ever being resolved. Also, after the lapse of time, even were an attempt made to place him on trial, the issue of a speedy trial denial would arise.

Our ruling in the present case will obviate the above dilemmas which this case would otherwise present.

The soundness of our ruling can best be illustrated by a reversal of the position of the parties. That is, if the State was alleging that Stacy was incompetent to stand trial, which it would have the right to do under existing law, but Stacy insisted that he be tried on the merits and could show that he would be competent by taking tranquilizing medication, then unquestionably we would hold that he would have the right to be tried at his insistence, and it would be error not to proceed with his trial. Thus, we think the State has the same right to insist that Stacy be tried on the merits of the case so long as it can be shown that the medication administered will render him mentally competent, will not affect his health, and does not preclude him from receiving a fair trial.

By virtue of the case holdings cited herein, and for the reasons set forth, we specifically hold that a defendant who is taking prescribed and controlled tranquilizing medication, and is able to understand the nature and object of the proceedings against him, rightly comprehends his own condition in reference to such proceedings, and is capable of advising with and assisting his counsel in preparing his defense, is competent to stand trial.

Based on the record before us, we conclude that the appellee Stacy meets the above tests. Thus, we hold that he is competent to stand trial. The ruling of the trial court is reversed, and this cause is remanded for a trial on the merits, or other proceedings not inconsistent with this opinion.

O'BRIEN and BYERS, JJ., concur.