# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 29, 2010

## ROBERT CLAY PRIEST v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Blount County
#### No. C-17077     Jon Kerry Blackwood, Senior Judge

### No. E2009-02137-CCA-R3-PC - Filed September 14, 2010

The petitioner, Robert Clay Priest, who pleaded guilty in the Blount County Circuit Court to multiple offenses and was sentenced to 29 years' confinement, appeals from that court's dismissal of his petition for post-conviction relief. On appeal, he claims that he was mentally incompetent to enter into a plea agreement, that the trial court failed to ask him to enter a guilty plea, and that the post-conviction court erroneously excluded his expert witness. We discern no error and affirm the order of the circuit court.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE, J., joined. D. KELLY THOMAS, JR., J., not participating.

Robert L. Huddleston, Knoxville, Tennessee, for the appellant, Robert Clay Priest.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Tammy Harrington, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On November 13, 2006, the petitioner entered guilty pleas to counts of especially aggravated robbery, aggravated robbery, aggravated burglary, attempted aggravated kidnapping, and burglary. The circuit court imposed a total effective sentence of 29 years. On December 14, 2007, the petitioner filed in the circuit court the petition for post-conviction relief now at issue. The post-conviction court appointed counsel for the petitioner and conducted an evidentiary hearing.

A transcript of the petitioner's competency and plea submission hearing was

exhibited to the post-conviction hearing. From the State's rendering of a factual basis for the pleas, we glean the following summary of the charged offenses:

> [O]n May [25,] 2005, [the petitioner] along with Bobby Bain burglarized a house under construction located in the same area, prior to the burglary of the Teffeteller residence. . . .
>
> Sometime after that burglary, . . . Mr. Bain and [the petitioner] entered the home of Leslie and Betty Jane Teffeteller. That was done, according to [the petitioner], by breaking out a pane glass window in the back door . . . . [The victims testified at the preliminary hearing] that they were awakened by two individuals standing on either side of their beds, including Ms. Teffeteller['s] saying that something was put to her head, which she was led to believe was a gun, and the statement was made demanding keys, money from both the Teffetellers.
>
> A struggle ensued . . . . Mr. Teffeteller . . . began to combat his assailants [with a hammer]. There was quite a bit of injury to Mr. Teffeteller, as well as Mr. Bain and [the petitioner] were injured . . . . Mr. Teffeteller was able to fight off his assailants. [The petitioner] was in the kitchen with Betty Teffeteller, asked for money, which she gave him from her purse. And then, according to Ms. Teffeteller, he then attempted to tie her hands behind her back as they were leaving. But the rope – I should say the belt then fell away . . . . She was not restrained for any significant period of time.
>
> After they left the residence, . . . they did try to gain access and take the Teffeteller's van. An alarm went off, a neighbor came out and they fled the premises. [The petitioner] was later found on a pay phone at a gas station . . . [and] made spontaneous statements . . . that he didn't mean to hurt them, that – basically admitted that he was there.

In the post-conviction evidentiary hearing, the petitioner testified that he was diagnosed with mental illness at the age of eight and had been in several mental hospitals within the State of Tennessee including Vanderbilt, St. Francis, Moccasin Bend, Peninsula,

Lakeshore, and Middle Tennessee Mental Health Institute. At the time of the post-conviction proceeding, he was incarcerated in the Lois M. DeBerry Special Needs Facility ("Lois M. DeBerry") within the Tennessee Department of Correction.

The petitioner testified that while incarcerated at Lois M. DeBerry, the medication that he was taking, Risperdal, caused him to "trip" and made him "temporarily insane." He was taken off of this medication and refused to take his new medication, Vistaril, because the drug caused him "more mental problems" than when he was without it.

The petitioner testified that he pleaded guilty to the crimes because he was "under a lot of stress" and that he had been intimidated by police officers in the county jail. He also testified that his lawyer told him that if he did not take the plea, he would be charged with possessing child pornography that had been found on his accomplice's computer. The petitioner stated that he did not clearly recall the day that he submitted his guilty plea. He claimed that he remembered speaking with his lawyer but that most of his recollection came from reading the transcript.

He testified that he recalled his lawyer's telling him that the lawyer did not believe that the petitioner was competent to stand trial. He recalled the mental evaluation done at Lakeshore, but he did not clearly recall the evaluation done at Vanderbilt that concluded that he was competent to stand trial.

The petitioner stated that he could not have been convicted of especially aggravated robbery because there were no serious injuries or of the crime of "robbery because robbery is the theft at the body of another." The petitioner claims that he was "railroaded due to the political clout that these victims had." He testified that he changed his mind about going to trial because the officers in the jail were having other inmates beat him and were putting things in his food.

The petitioner asked the court to allow him to withdraw the guilty pleas and give him a trial on the merits.

On cross-examination, the petitioner claimed that his lawyer "didn't do what he should have done." He claimed he asked his lawyer to get him transferred to another jail because the family of the victims worked there and tried to intimidate him. He claimed he also asked his lawyer to get a change of venue "due to the publicity."

The petitioner testified that he was given copies of everything that his lawyer had. He claimed, "I don't remember nothing at the plea. I remember reading – I got all the paperwork." The petitioner testified that, as a result of the pleas, two cases pending in

general sessions court for aggravated perjury and aggravated assault were dismissed.

The petitioner's trial counsel testified that he recalled the petitioner's three-month commitment to Lakeshore, as well as the subsequent determination by Vanderbilt that the petitioner was neither insane nor incompetent and that he was malingering. Counsel testified that he had 29 contacts with the petitioner and opined that the petitioner was able to communicate effectively with counsel.

Counsel testified that there was insufficient "tainting of the [jury] pool to do a change of venue."

Counsel testified that the petitioner could have received a sentence of 53 years if he had gone to trial and that the petitioner asked counsel to initiate plea negotiations with the State. Counsel stated that the case against the petitioner was overwhelming and that the only defense was insanity, based on the Lakeshore report. Counsel testified that the petitioner thought it would be in his best interest to take the plea because the risks were too great to go to trial. He testified that the risk of a poor outcome at trial was heightened by the possibility that the jury would be sympathetic with the elderly victims whose home was invaded. Counsel also testified that the petitioner said that he wanted to go from jail to prison because it would be "nicer."

The evaluative reports from Lakeshore and Vanderbilt were exhibited to the post-conviction hearing.

The post-conviction court entered written factual findings and conclusions of law. The court found that trial counsel had obtained a pretrial mental evaluation of the petitioner which resulted in Lakeshore's determinations that he was incompetent to stand trial and that a defense of insanity could be supported. The State requested further pretrial evaluation, and the trial court ordered an evaluation at Vanderbilt which resulted in determinations that the petitioner was competent to stand trial and that a defense of insanity was unsupportable.

The post-conviction court further found that the petitioner was not a credible witness. It found that trial counsel "recognized the need for a mental evaluation of petitioner and took all appropriate steps to pursue a defense based upon a mental condition." The court found that trial counsel conducted numerous interviews of the petitioner and believed him to be lucid and to understand the proceedings. The court found that trial counsel provided the petitioner with copies of the discovery materials and discussed with the petitioner the possibilities for trial strategy, including the use of an insanity defense. The court found that no undue publicity had occurred that would have warranted a change of venue. Finding that

the petitioner requested his counsel to pursue plea negotiations, trial counsel obtained a plea offer that entailed the reduction of the Class A felony charge of especially aggravated robbery to a Class B felony with a release eligibility of 30 percent. The court found that the plea colloquy was thorough and detailed.

Based upon these findings, the post-conviction court concluded that the pleas were knowingly and voluntarily entered and that the petitioner received the effective assistance of trial counsel. From this determination, the petitioner filed a timely appeal.

On appeal, the petitioner claims that his diminished mental capacity invalidated his guilty pleas as a matter of due process of law, that the guilty pleas were not effectively submitted, and that the post-conviction court erred in disallowing expert testimony about the adequacy of the conviction court's inquiry into the petitioner's competency to submit guilty pleas.

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). The appellate court defers to the post-conviction court's resolution of credibility issues. *See Massey v. State*, 929 S.W.2d 399, 403 (Tenn. Crim. App. 1996); *Taylor v. State*, 875 S.W.2d 684, 686 (Tenn. Crim. App. 1993). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

First, we address the petitioner's claim that, based upon his diminished mental capacity, principles of due process precluded the entry of valid guilty pleas. He posits that the transcripts of the pre-plea competency hearing and the post-conviction evidentiary hearing evince his incompetency at the time the pleas were submitted.

Our supreme court, in setting forth the standard for identifying a constitutionally valid guilty plea, has noted that "before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily." *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)). Our high court has noted that "a plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats,'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43), or if the defendant was "incompetent or otherwise not in control of his mental facilities" when the plea was entered, *id*. "It is a fundamental principle of our system of

criminal justice that one who is charged with a crime cannot be required to plead to the offense, be put to trial, convicted, or sentenced while insane or otherwise mentally incompetent." *Berndt v. State*, 733 S.W.2d 119, 121 (Tenn. Crim. App. 1987) (citing *Pate v. Robinson*, 383 U.S. 375 (1966); *Drope v. Missouri*, 420 U.S. 162 (1975); *State v. Stacy*, 556 S.W.2d 552 (Tenn. Crim. App. 1977); *Mackey v. State*, 537 S.W.2d 704 (Tenn. Crim. App. 1975)). "The conviction of an accused while mentally incompetent violates the basic concepts of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Such a conviction also violates Article I, Section 8 of the Tennessee Constitution." *Berndt*, 733 S.W.2d at 122 (internal citations omitted). Furthermore,

> The standard for determining the competency of an accused to stand trial, i.e. the capacity to understand the nature and object of the proceedings, consult with counsel, and assist in the preparation of his or her defense, is the same standard to be applied in determining the competency of an accused to plead guilty or nolo contendere. A person who has been found competent to stand trial has the requisite mental competence to waive his or her rights and enter a plea of guilty or nolo contendere. This is the prevailing view in this country.

*Id.* at 123.

First, we address the claim that the petitioner's testimony in the post-conviction hearing supports the claim of his mental debility at the time of plea submission. On this point, we must defer to the post-conviction court's resolution of credibility issues, and in this case, the post-conviction court found that the petitioner was not credible.

Second, we remind the petitioner that the proceeding below was not a direct action to obtain leave to withdraw his guilty pleas; it was a post-conviction proceeding. As such, the petitioner bore the burden of establishing his claims by clear and convincing evidence. *See State v. Antonio Demonte Lyons*, No. 01C01-9508-CR-00263 (Tenn. Crim. App., Nashville, Aug. 15, 1997) (distinguishing between challenges to guilty pleas brought through a petition for post-conviction relief, on the one hand, and through a motion to withdraw a guilty plea via Tennessee Rule of Criminal Procedure 32(f), on the other, and stating that the standards for a Rule 32(f) avoidance of a guilty plea are less stringent than the standard for post-conviction proceeding). Other than the evaluative reports from Lakeshore and Vanderbilt, which essentially are in conflict, and the petitioner's testimony in the pre-plea competency hearing, no credible evidence of record really addresses the issue. Although the record shows that the petitioner amassed a long history of mental health treatment, the extensive Vanderbilt report, issued just a week prior to the competency and

plea submission hearing, diagnosed the petitioner as a malingerer who exhibited merely an antisocial personality disorder with borderline traits and who was competent to stand trial and who appreciated the nature and wrongfulness of his criminal conduct. From our review of the transcript of the trial court's voir dire of the petitioner for the purpose of determining his competency to waive his rights and submit a guilty plea, we cannot say that the court's conclusion that the petitioner was competent is unsupported in the record. Under the circumstances of this case, we agree with the post-conviction court that the petitioner failed to establish by clear and convincing evidence that he was not competent to validly waive his constitutional rights and enter guilty pleas.

In the petitioner's next issue, he claims that his convictions are invalid because the trial court failed to ask him in the plea-submission hearing whether he in fact was pleading guilty to the charges.

Unfortunately for the petitioner, this issue recently has been settled by our supreme court. In *Jeffery Aaron Lane v. State*, --- S.W.3d ---, No. E2007-00032-SC-R11-PC (Tenn., Knoxville, July 14, 2010), the court held that, when a trial court "substantially complied with the federal and Tennessee guilty plea mandates with its questions and the defendant affirmatively answered these questions," a valid, knowing, voluntary, and intelligent guilty plea resulted despite that the trial court did not specifically ask the defendant whether he was pleading guilty. *Id.* at ---, slip op. at 14.

In the present case, we hold that the trial court substantially complied with the law in questioning and advising the petitioner concerning his plea agreement.[1]

In his final issue, the petitioner asserts that the post-conviction court erred in disallowing the expert testimony of an attorney concerning the adequacy of the trial court's pre-plea competency hearing.

We decline to review the issue because the petitioner did not comply with Tennessee Rule of Evidence 103; the petitioner did not proffer the testimony of the attorney expert. "Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Tenn. R. Evid. 103(a)(2). In the present case, counsel for the petitioner merely described the purpose of the proposed testimony in stating that it

---

[1]In so holding, we do not wish to imply that non-constitutional elements in a plea litany may *ipso facto* form the basis for a post-conviction claim. *See* T.C.A. § 40-30-103; *see also, e.g.*, *Casey Skelton v. State*, No. E2007-02818-CCA-R3-CD (Tenn. Crim. App., Knoxville, Aug. 28, 2008).

"would address the sufficiency of [the trial judge's] questioning in order to assess the competency of [the petitioner] on the day of the plea." Lacking a proffer of the expert testimony, we cannot discern how or to what extent the proposed testimony would have addressed the sufficiency of the competency hearing, whether it would have substantially assisted the post-conviction court, *see* Tenn. R. Evid. 702, or whether the facts or data utilized by the proposed expert met the requirements of Tennessee Rule of Evidence 703. Also, we cannot know without a proffer whether some issue, unrevealed in the competency hearing, could have emerged through the proposed expert and altered the perception of the competency inquiry. Accordingly, error may not be predicated upon the exclusion of this evidence.

At any rate, we doubt that a substantial right of the petitioner was at stake as required by Rule 103(a). The post-conviction court and this court have both reviewed the transcript of the competency hearing and the evaluative reports. As we noted above, the record evinces a basis for the trial court's determination of competency.

In view of the foregoing analysis, we affirm the order of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE