553 P.2d 1296

STATE of New Mexico, Plaintiff-Appellee,

v.

Claudio JOJOLA, Defendant-Appellant.

No. 2518.

Court of Appeals of New Mexico.

Aug. 24, 1976.

Jan A. Hartke, Acting Chief Public Defender, Bruce L. Herr, Appellate Defender, John Zavitz, Asst. Appellate Defender, Sante Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Paquin M. Terrazas, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

 Defendant was convicted of two counts of aggravated sodomy. Section 40A–9–7, N.M.S.A.1953 (2d Repl. Vol. 6), subsequently repealed. He asserts that the trial court improperly admitted hearsay evidence to show that the offenses occurred on the date charged—"on or about the 1st day of February, 1975". We do not consider whether the evidence was inadmissible hearsay. The date of the offenses was established through testimony to which no objection was made and which was independent of the alleged hearsay evidence. The issues discussed are: (1) pre-indictment delay, and (2) medication of defendant. Other issues were stated in the docketing statement, but were not argued in the briefs. Such issues are deemed abandoned. *Novak v. Dow,* 82 N.M. 30, 474 P.2d 712 (Ct.App.1970).

*Pre-Indictment Delay*

Defendant claims he was denied due process of law by the delay between the time he committed the offenses on or about February 1, 1975 and the indictment date of September 18, 1975. The time is approximately 7½ months.

*State v. Baca,* 82 N.M. 144, 477 P.2d 320 (Ct.App.1970) recognized that such delay may so prejudice a defendant as to amount to a denial of due process. *Baca* involved delay due to police undercover work in a number of narcotics cases. A balancing test was applied in *Baca*—the reasonableness of the conduct of the police was weighed against the possible prejudice to the defendant.

Subsequent to the *Baca* decision, the United States Supreme Court decided *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). *Marion* indicates: (1) the reference in *Baca* to "possible prejudice" is incorrect, and (2) the balancing test is not to be applied until defendant has shown prejudice by the delay.

*United States v. Marion,* supra, requires a showing of substantial prejudice to the defense before the defendant can obtain dismissal for pre-indictment delay. Due process would require dismissal "if it were shown . . . that the pre-indictment delay in this case [over three years] caused substantial prejudice to . . . [defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Marion* states: "Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case."

██ We understand *Marion* to mean: 1. A showing of substantial prejudice is required before one can obtain a dismissal for pre-indictment delay. 2. The elapsed time, in itself, does not determine whether prejudice has resulted from the delay. 3. Substantial prejudice may not exist even when actual prejudice is shown; every delay-caused detriment does not amount to substantial prejudice. 4. Where actual prejudice is shown, the actual prejudice must be balanced against the reasons for the delay in determining whether a defendant has been substantially prejudiced. We apply our understanding of *Marion* to this case.

Defendant contends the State failed to show any reason for the delay. We agree;

however, under the facts of this case we are not concerned with the reason for the delay because the defendant has not shown he was actually prejudiced by the delay.

A pretrial hearing was held on the motion to dismiss for pre-indictment delay. The only evidence introduced in support of the motion was defendant's testimony. Defendant testified he could not remember what he was doing, where he was or who he was with on February 1, 1975. The only showing made was that defendant could not remember his activities on February 1, 1975. Such a showing is insufficient.

*United States v. Atkins,* 487 F.2d 257 (8th Cir. 1973) states: "Atkins claims his defense was impaired by the delay between the dates of the incidents here in question and his arrest since he was unable to recall his whereabouts on those days. This is not enough. A claim merely of general inability to reconstruct the events of the period in question is insufficient to establish the requisite prejudice for reversal based on denial of due process."

A general claim of being unable to remember events for the period in question is insufficient because if such a claim was required to be accepted, it would be a rare case in which a defendant could not successfully assert such a defense. See *State v. Crump,* 82 N.M. 487, 484 P.2d 329 (1971).

To establish actual prejudice from delay because of inability to remember events for the period in question, a defendant must establish how his lack of memory has precluded him from showing in what respect his defense might have been more successful if the delay had been shorter. See *United States v. Feinberg,* 383 F.2d 60 (2nd Cir. 1967). As an example, if defendant can establish his activities through others, his own lack of memory as to his activities has not prejudiced the defendant. See *United States v. Golden,* 436 F.2d 941 (8th Cir. 1971); *United States v. Atkins,* supra.

There is no evidence in this case that defendant even attempted to reconstruct his activities through others. There is no evidence that his lack of memory precluded a showing that his defense might have been more successful if the delay had been shorter. The trial court correctly denied the motion.

*Medication of Defendant*

Defendant had a long history of mental illness. An evidentiary hearing was held to determine defendant's competency to stand trial.

The evidence was that defendant was psychotic; that he suffered from a schizophrenia of the paranoid type with signs of being autistic. His paranoia was described as the type where defendant feels he is persecuted by just about everyone with whom he is in contact. "Autistic" was described as an exaggerated form of daydreaming, daydreaming to the point where one is completely detached from what is going on around one. There was evidence that defendant's condition was in a state of remission, being controlled by a dosage of Thorazine.

Thorazine was described as a type of phenothiazine medication. The effect of Thorazine was described as inhibiting or depressing the emotional part of the brain and allowing the cognitive part to come back into play. A person being dosed with Thorazine is sedated emotionally more than cognitively and would have the ability to make decisions and communicate with others.

The evidence was that defendant was competent to stand trial so long as he was medicated with Thorazine. Defendant withdrew his motion concerning incompetency after the evidence was presented. No claim is made on appeal that defendant was incompetent to stand trial. See *People v. Dalfonso,* 24 Ill.App.3d 748, 321 N.E.2d 379 (1974); *State v. Hampton,* 253 La. 399, 218 So.2d 311 (1969); *State v. Potter,* 285 N.C. 238, 204 S.E.2d 649 (1974); *State v. Rand,* 20 Ohio Misc. 98, 247 N.E.

2d 342 (Ct.Com.Pl.1969); *State v. Hancock,* 247 Or. 21, 426 P.2d 872 (1967).

■ Defendant testified that he did not wish to go to trial while using Thorazine. His request was denied. He claims the trial court violated his right to due process of law in not permitting defendant to be tried when he was not under the influence of Thorazine. This due process claim has two parts: (1) the absolute right to be tried when not being medicated with Thorazine, and (2) the right not to be so tried because his trial demeanor was relevant to his theory of defense.

The inference from the record is that the Thorazine was administered to defendant by officials at the New Mexico State Hospital at Las Vegas. There is no evidence that defendant consented to taking Thorazine. The record is to the effect that the State had undertaken to control defendant's behavior by administering Thorazine.

In contending that he has an absolute right to be tried free from the influence of Thorazine, defendant relies on *State v. Maryott,* 6 Wash.App. 96, 492 P.2d 239 (1971). *Maryott* holds that the state had no right, without defendant's consent, to administer tranquilizing drugs to control a defendant's behavior during trial. Maryott was administered substantial doseages of Sparine, Librium and chloral hydrate by his jailers. "Expert testimony indicated the dosages administered would affect the thought, expression, manner and content of the person using the drugs." The decision in *Maryott* is based on freedom of thought, the right to appear in court with mental faculties unfettered and the state's action in controlling defendant's mental processes.

We do not agree that *Maryott* is controlling. There is no evidence that Thorazine affected defendant's thought processes or the contents of defendant's thoughts; the affirmative evidence is that Thorazine allows the cognitive part of the brain to come back into play. The expert witnesses declined to call Thorazine a mind altering

drug. "Rather, Thorazine allows the mind to operate as it might were there not some organic or other type of illness affecting the mind." This difference in the facts makes *Maryott* inapplicable to this case.

In *State v. Hancock,* supra, a physician's prescription for Valium was administered to defendant by county health authorities. In *Hancock,* as in this case, the medication was for the purpose of controlling defendant's emotions. Hancock claimed he was denied a fair trial because he was under the influence of tranquilizers which allegedly impaired his mental functions and ability to confront his accusers. The Oregon Court held there was no showing that the Valium impaired defendant's mental function in any way during his trial, and that defendant was not denied a fair trial.

The evidence in this case was that Thorazine enabled defendant to confer with his attorney and answer questions. "With this patient Thorazine brings him to the point that he does seem to me to be able to appreciate the charges, the consequences, the atmosphere of the courtroom, and why it is being done . . . ." Thorazine enabled "the patient to relate in a realistic way, to see things as they really are." Defendant took the stand in his own defense. There is no claim that defendant was unable to comprehend or to fully participate in the trial proceedings.

The facts in this case are similar to those in *State v. Hancock,* supra. In the absence of evidence that defendant's thought processes or the contents of defendant's thoughts were affected by the Thorazine, we hold that defendant was not denied due process because the trial took place while he was being medicated with Thorazine. *Jones v. State,* 71 Wis.2d 750, 238 N.W.2d 741 (1976); *State v. Arndt,* 1 Or.App. 608, 465 P.2d 486 (1970). In so holding, we have not overlooked the contention that all of the effects of Thorazine are unknown. The answer is that there was evidence as to the effects of Thorazine on this defendant, and that evidence does not show that defendant was denied due

process because he was tried while taking Thorazine.

■ The evidence supports defendant's claim that his courtroom demeanor was affected by the Thorazine. He was sedated emotionally and had a calmer demeanor. Defendant asserts his demeanor was relevant to his theory of defense and therefore due process was violated because the jury saw only his altered demeanor during his trial.

Several cases hold that a due process question is presented if a defendant's demeanor is altered by medication and defendant's demeanor is relevant to any issue to be decided by the jury. There was a due process issue in *State v. Maryott,* supra, and *In Re Pray,* 133 Vt. 253, 336 A.2d 174 (1975) because of the insanity defense. There was a due process issue in *State v. Murphy,* 56 Wash.2d 761, 355 P.2d 323 (1960) because in that case the jury determined the penalty for first degree murder.

Once a due process issue exists, it must be determined whether due process has been violated. *State v. Gwaltney,* 77 Wash.2d 906, 468 P.2d 433 (1970) states: "The inability of a defendant to effectively express to a judge or jury his true emotional feelings on a subject is a fact that can be adequately explained to the trier of fact by either the defendant himself or by another witness. It is not a fact of which a judge or jury cannot be appropriately and effectively advised."

The jury was not informed that defendant had been sedated emotionally. A pretrial ruling of the trial court states: "[T]he defense can introduce any prior unusual behavior of the Defendant as evidence at the trial and, in addition, can introduce at trial as evidence the fact that he [is] using thorazine and the effect that the drug medication has on the Defendant by expert testimony, unless the Court is persuaded to rule otherwise during trial proceedings."

Assuming that a due process issue existed in this case, there is nothing showing due process was in fact violated. Defendant was expressly given the opportunity to inform the jury as to the fact of Thorazine medication and its effect upon defendant. No effort was made to introduce such evidence, yet the record shows that defendant knew about the medication and its effect and had presented evidence on this issue prior to trial. See *In Re Pray, supra.* Thus, even if a due process issue existed, there was no violation of due process.

■ Another answer to defendant's contention is that this record does not show a due process issue existed. In pretrial hearings, defendant contended that "it's going to be an important facet of the defense's theory that children in the neighborhood make up stories about Mr. Jojola"; that "a story made up by individuals got out of hand"; that when defendant takes the stand and appears normal "that is going to have an effect upon whether or not the jury would believe that indeed children would make up stories about a person such as this". This theory was not pursued at trial. There was no evidence about "made-up stories".

Defendant's claim that due process was violated because his demeanor was relevant to a defense theory is not supported by the record. Because the record does not show that the administration of Thorazine has affected defendant's defense or his right to a fair trial, we do not reach the question of what, if any, consequences result in a situation where the State involuntarily administers a medication.

The judgment and sentence are affirmed.

It is so ordered.

HENDLEY and LOPEZ, JJ., concur.