Rockingham
No. 78-021

THE STATE OF NEW HAMPSHIRE

v.

ROBERT W. HAYES

June 19, 1978

*Thomas D. Rath*, attorney general (*Richard B. Michaud*, attorney, orally), for the State.

*Arthur C. Randlett*, of Seabrook, and *G. Page Brown*, of Exeter (*Mr. Brown* orally), for the defendant.

GRIMES, J.　The issues we decide in this murder case are whether a court may force a defendant to take medication during trial if he is competent to stand trial only when medicated; whether the defendant may waive his right not to be tried while incompetent by electing while competent to cease taking medication that would continue his competence; and whether the defendant bears the burden of proving insanity under *Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124 (1978).

The defendant was indicted for the murder of Alan Eno on February 16, 1977. He pleaded not guilty by reason of insanity. This being a plea of confession and avoidance, *id.*, the only issues to be tried are whether at the time of the offense the defendant had a mental disease and, if so, whether the crime was the product of that disease.

Before he committed the crime the defendant had been taking medication consisting of stelazine, artane, and valium, but he stopped taking them the day before the crime. After his arrest, he was put back on psychotropic medication, including lithium, stelazine, and valium.

The defendant moved that he be taken off medication seven days before his trial so that the jury could see him in his unmedicated state. The motion was granted in November 1977 over the State's objection. Thereafter the State moved for a rehearing, and an evidentiary hearing was held on January 5, 1978. The State presented evidence that at the time of the crime defendant was still under the influence of the medication. Expert evidence was also introduced that the medication the defendant had been taking since the crime increased his ability to organize his thoughts. The court reaffirmed its decision that the defendant be taken off medication and entered an order to that effect at the conclusion of the hearing. Trial was set for January 16.

On January 13, 1978, a hearing on the defendant's motion to suppress his confession was suspended to hear evidence regarding the defendant's competency to stand trial. The State offered expert testimony of a psychiatrist, the director of the forensic unit at the New Hampshire Hospital, that the defendant had deteriorated to a hypomanic state and experienced difficulty concentrating because he had discontinued his medication. The psychiatrist further testified that although the defendant could recall facts, communicate, and understand the judicial proceeding, the defendant was not as able to help his lawyer as he would be on medication, and that he would get worse if he did not start taking medication again. His opinion was that the defendant would be incompetent to stand trial on January 16. This was confirmed by another psychiatrist produced by the defendant. The defendant himself also testified. The Court (*Loughlin*, J.) concluded that the defendant was incompetent to stand trial, revoked the previous order, and transferred the following two questions:

May the Court force a defendant to be under drug medication at least four weeks prior to and during trial, against his will, where the evidence is uncontroverted that he is mentally competent to stand trial only while under the influence of said medication?

Does defendant validly waive his right to be tried while competent by electing, while medicated and competent, to be taken off drug medication before and during trial?

At a later time, the court also transferred the question whether *Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124 (1978), requires that in this trial the defendant bear the burden of proving he was insane at the time of the offense.

In *State v. Maryott*, 6 Wash. App. 96, 492 P.2d 239 (1971), the court held that compelling the defendant to take drugs at the time of his trial violated his fundamental rights. The court relied on a line of cases holding that it was impermissible to restrain a prisoner with shackles or bonds, absent a real danger of escape, because of the chance that the defendant's pain would " 'take away any manner of reason.' " *Id.* at 99, 492 P.2d at 241. The court also concluded that if the State were to be allowed to drug a defendant against his will, the State could thereby control its own adversary and thus destroy the adversary process. The court in *Maryott* also feared that in cases involving the mental competency of the defendant the State's refusal to allow the defendant an opportunity to have the jury observe him in an undrugged state would deprive him of due process.

However, *Maryott* apparently was based on evidence that the drugs there involved "would affect the thought, expression, manner and content of the person using the drugs." *Id.* at 97, 492 P.2d at 240. Also, in *Maryott*, unlike in the case at bar, it does not appear that the defendant had been under the influence of drugs up until the day before the commission of the crime.

In the case before us there is no evidence that the drugs administered to the defendant affected the process or content of his thoughts. To the contrary, all the evidence indicates that the drugs used here allow the cognitive part of the defendant's brain, which has been altered by the mental disease, to come back into play. All the expert evidence supports the conclusion that the medication has a beneficial effect on the defendant's ability to function and that without the medication he is incompetent to stand trial. There is no evidence that the defendant's competence to stand trial can be maintained by less intrusive treatment techniques.

In *State v. Jojola*, 89 N.M. 489, 553 P.2d 1296 (1976), the court upheld the conviction of a defendant who had a long history of mental illness and who was kept under medication by thorazine during his trial. The expert testimony in that case was that " 'Thorazine allows the mind to operate as it might were there not some organic or other type of illness affecting the mind.' " *Id.* at 492, 553 P.2d at 1299. The court held that the defendant was not denied due process when the jury viewed his demeanor while he was under medication, because he was given full opportunity to inform the jury about

the medication's effect on him and also because the defendant's demeanor at trial in that case was not in issue.

We are of the opinion that the effect of the drugs on the defendant in the case before us is like the effect of drugs on the defendant in *Jojola* and unlike the effect in *Maryott*, and that the defendant has no absolute right to be tried free from the influence of the drugs administered to him in this case.

We are well aware of the dangers of allowing the State to administer drugs to a defendant against his will while he is on trial. However, we believe that the rights of defendants to be free from drugs that could control or alter their normal, disease-free thought processes will be adequately protected by the fact-finding ability of our trial courts and their sound exercise of discretion.

■ The defendant's demeanor in the instant case is relevant to the issue of his sanity at the time the crime was committed. He claims that he should be permitted to have the jury view him in his so-called natural state after he has ceased taking drugs for seven days. The evidence at the hearings before the trial court, however, indicated that the defendant had stopped taking his medication only the day before the crime. Expert testimony showed that he would have been under the influence of the medication at the time of the crime. The defendant would not be entitled to have the jury view him in a state as free from the effects of medication as he would be after seven days, unless there is evidence that he was in such a state at the time of the crime. The time at which the jury is to view the defendant, after he has stopped medication, is a matter for the trial court to determine on all the evidence.

■ Our answer to the first question is that the trial court may compel the defendant to be under medication at least four weeks prior to trial if the jury is instructed about the facts relating to the defendant's use of medication and if at some time during the trial, assuming the defendant so requests, the jury views him without medication for as long as he is found to have been without it at the time of the crime. *See In re Pray*, 133 Vt. 253, 336 A.2d 174 (1975). *See generally* Winick, *Psychotropic Medication and Competence To Stand Trial*, 1977 Am. B. Foundation Research J. 769.

■■ If the defendant by his own voluntary choice, made while competent, becomes incompetent to stand trial because he withdraws from the medication, he may be deemed to have waived his right to be tried while competent. *Illinois v. Allen*, 397 U.S. 337 (1970); *State v. Maryott*, 6 Wash. App. 96, 492 P.2d 239 (1971); Winick,

*supra* at 797. The trial court should however carefully examine the defendant on the record, while competent, to establish the following: that the defendant understands that if he is taken off the psychotropic medication he may become legally incompetent to stand trial; that he understands that he has a constitutional right not to be tried while legally incompetent; that the defendant voluntarily gives up this right by requesting that he be taken off the psychotropic medication; and that he understands that the trial will continue whatever his condition may be. The answer to the second question is therefore in the affirmative.

The third question transferred is whether *Novosel v. Helgemoe*, 118 N.H. 115, 384 A.2d 124 (1978) will govern defendant's trial so as to place upon him the burden of proving his insanity as a defense. The *Novosel* case by its terms applies to "future cases." The term "future cases" was intended to refer to future trials conducted after the date of the decision. The ex post facto provisions of the Federal Constitution are not applicable to court decisions, *Marks v. United States*, 430 U.S. 188 (1977), and we rule that due process is not denied by our holding *Novosel* applicable to this case.

*Remanded.*

All concurred.