This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                          **NO. 30,581**

**JERRY KANT,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Natalie Bruce
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**CASTILLO, Chief Judge.**

Defendant appeals from his conviction on two counts of battery with a deadly weapon, stemming from a bloody brawl that broke out in the early morning hours of August 9, 2008, at a home in Rio Rancho, New Mexico. Defendant raises seven issues on appeal. We affirm.

**BACKGROUND**

Because both parties are familiar with the events in dispute, we review just the basic facts here before proceeding to our discussion. Defendant and three co-defendants were charged with a number of offenses relating to a violent altercation that occurred during a party held in the yard and driveway at the home of Robert Montaño, one of four victims of the altercation. Guests at the party included Steve Jimenez, Carlos Santiago, and Arnold Conejo. The clash started when co-defendant Samuel Urioste and a friend rode up to the home on bicycles, engaged the partygoers in conversation, and were each given a beer. Testimony conflicts as to whether Samuel left and returned or immediately became involved in an altercation with some of the four victims. Within about ten minutes, Samuel's brother, Leondro Urioste, and two friends, including Defendant, drove up to the house, walked up the driveway, and began fighting with the victims. The melee involved the use of a set of brass knuckles, a metal chair, the handle to a sprinkler system, and a gun. Robert's wife, Janet Gonzales, called 911, and she described some of the events to a police

dispatcher. Defendant and co-defendants eventually drove off with the seriously injured Samuel in the front seat and their vehicle was stopped less than a half mile from the scene.

Defendant was convicted of two counts of aggravated battery with a deadly weapon, and he was acquitted of conspiracy. He raises seven issues on appeal. He contends that the court erred (1) in admitting photographs of the injured victims, (2) in admitting the recording of a 911 call made by one of the victim's wife, (3) in admitting the brass knuckles allegedly used in the attack into evidence, (4) in rejecting jury instructions on self-defense and the right to not retreat, (5) in denying a motion for directed verdict as to the charge of aggravated battery with a deadly weapon, (6) in denying a motion for directed verdict on the conspiracy charge, and he complains (7) that he received ineffective assistance of counsel for his attorney's failure to file a motion to dismiss based on deficiencies in the police investigation. We address his arguments in order.

**DISCUSSION**

**1.    Admission of Photographs**

Defendant first argues that the district court erred in allowing photographs of two of the bruised and bloody victims to be admitted into evidence because the photographer, Arnold's girlfriend Arlene, was not called to testify and help lay a

foundation for the photos. Preliminary questions on admissibility of evidence are determined by the trial judge. *See* Rule 11-104(A) NMRA. We review a district court's decision whether to admit or exclude evidence for abuse of discretion. *Ruiz v. Vigil-Giron*, 2008-NMSC-063, ¶ 7, 145 N.M. 280, 196 P.3d 1286 (per curiam).

"For authentication of still photographs, the required foundation is that the pictures fairly and accurately represent that which is shown by the pictures." *State v. Thurman*, 84 N.M. 5, 8, 498 P.2d 697, 700 (Ct. App. 1972). Such testimony is sufficient for photographs to be admitted into evidence. *See State v. Foster*, 82 N.M. 573, 575, 484 P.2d 1283, 1285 (Ct. App. 1971). In *Foster*, the victim "testif[ied] that each of the photographs fairly and accurately represented the things shown in the photographs and fairly and accurately represented what he had described in his testimony." *Id.* The victim also did not know who took the photos or when they were taken, and we concluded that testimony from the photographer was not required to admit the photos into evidence. *See id.* In the case before us, Defendant cites no statute, rule or case law from New Mexico to the contrary. At trial, Robert testified as to the injuries allegedly caused by Defendant, and he identified the photographs introduced into evidence as accurate depictions of the injuries he suffered. Such testimony was sufficient to authenticate the photographs such that the district court did not abuse its discretion in allowing them to be admitted into evidence.

## 2.      Admission of 911 Recording

Defendant also contests the district court's ruling to admit a recording of the 911 emergency call made to police by Robert's wife, Janet, because the police dispatch operator was not called to authenticate the recording. We review for abuse of discretion. *Ruiz*, 2008-NMSC-063, ¶ 7.

As noted in the previous section, a piece of evidence may be authenticated by witness testimony that identifies the piece of evidence as being what its proponent claims it to be. *See* Rule 11-901(A) NMRA (stating that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims). An opinion about a voice electronically recorded satisfies the requirement of the rule. *See* Rule 11-901(B)(5). We have previously stated that the "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, can be made by opinion based on hearing the voice at any time under circumstances connecting it with the alleged speaker." *State v. Garcia*, 110 N.M. 419, 425, 796 P.2d 1115, 1121 (Ct. App. 1990).

In the case before us, Janet testified that she spoke to a 911 dispatch operator during the attack and gave the operator an eyewitness account of what she was seeing, including one co-defendant pointing a gun at her. Gonzales testified that she listened

5

to the CD recording of that 911 call and that the contents of the CD recording accurately reflected the conversation she had with the police dispatcher during the attack. The district court, citing *Garcia*, concluded that such testimony was sufficient to satisfy Rule 11-901 because the testimony provided sufficient evidence to support a finding that the recording was of what the State claimed it to be. We interpret Rule 11-901 the same way and cannot say that the district court abused its discretion in admitting the 911 recording.

On appeal, Defendant argues that in order for an audio recording to be admitted, it must be shown that the recording device operated properly, that the operator of the device was competent, and that the recording was not subsequently altered. *See State v. Baca*, 82 N.M. 144, 146, 477 P.2d 320, 322 (Ct. App. 1970), *overruled on other grounds by State v. Jojola*, 89 N.M. 489, 490, 553 P.2d 1296, 1297 (Ct. App. 1976). The rule stated in *Baca*, however, predates by about five years the evidentiary rule governing the authentication and identification of an item of evidence. New Mexico's Rule 11-901 is based on Rule 901 of the Federal Rules of Evidence that was enacted in 1975. *See* Fed. R. Evid. 901; *Estate of Romero ex rel. Romero v. City of Santa Fe*, 2006-NMSC-028, ¶ 8, 139 N.M. 671, 137 P.3d 611 (noting that "New Mexico Rules of Evidence generally follow the federal rules of evidence"). Further, the example given at Rule 11-901(B)(9) allowing "[e]vidence describing a process or system and

showing that it produces an accurate result" tracks with the *Baca* reasoning and merely provides an alternate way of authenticating a recording. The district court's ruling fits comfortably within Rule 11-901 and did not constitute an abuse of discretion.

**3.	Admission of Brass Knuckles**

Defendant next argues that the district court erred in admitting into evidence the brass knuckles allegedly used by Defendant during the altercation. He contends that proper police procedure was not followed, including gaps in the chain of custody. He postulates that the set of brass knuckles presented as evidence may have been different from that found at the scene of the crime or that the evidence might have been tampered with. As above, we review the court's decision whether to admit or exclude evidence for abuse of discretion. *Ruiz*, 2008-NMSC-063, ¶ 7. We will find no abuse of discretion when the state shows by a preponderance of the evidence that the item of evidence is what it purports to be. *See State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896.

"In order to admit real or demonstrative evidence at trial, the item of evidence in question must be identified, either visually or by establishing the custody of the object from the time it was seized to the time it is offered in evidence." *State v. Chavez*, 84 N.M. 760, 761, 508 P.2d 30, 31 (Ct. App. 1973). The state need not

establish the chain of custody with such precision as to exclude all possibility of tampering. *See Claridge v. N.M. State Racing Comm'n*, 107 N.M. 632, 641, 763 P.2d 66, 75 (Ct. App. 1988). Any questions about a gap in the chain of custody when handling evidence goes to the weight of the evidence and not to its admissibility. *Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶ 30, 121 N.M. 840, 918 P.2d 1340.

Here, a police officer provided both a visual identification of the brass knuckles and vouched for its journey through the chain of custody. Officer Brown testified that he found the brass knuckles covered in what appeared to be blood stains on the other side of a wall running along the property where the fight occurred. Officer Brown testified that the set of brass knuckles presented before the court was the same item he collected and photographed at the scene during the morning of the altercation, including similar blood stains. In addition to visually identifying the object, Officer Brown described the procedure used to secure the evidence. He testified that he photographed the set of brass knuckles after finding it, placed it in a paper bag, sealed the bag with evidence tape, labeled the bag with the case number and the date, and logged the bag into an evidence container at the Rio Rancho Police Department. Just before trial, Officer Brown testified that he had retrieved the still-sealed bag from the evidence custodian, broken the seal, and identified the brass knuckles as the same item he had discovered at the scene.

The State presented a substantial amount of evidence linking the item found at the scene with the one presented at court. After hearing Officer Brown's testimony, the district court admitted the evidence. We conclude that, based on the evidence presented in the form of Officer Brown's testimony, the district court did not abuse its discretion in finding that the State adequately established that the item presented in court met the threshold for admissibility.

**4.      Jury Instruction on Self-Defense and Retreat**

Defendant next argues that the district court erred in denying his request for a jury instruction on self-defense and the right of a combatant to not retreat. "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (internal quotation marks and citation omitted).

Before analyzing the merits of this issue, we first address the State's argument that Defendant failed to preserve this issue for appeal. In general, we will decline to review a court's denial of a request for a jury instruction if the issue has not been preserved through submitting such a request and objecting to the denial of the request. *See State v. Badoni*, 2003-NMCA-009, ¶ 7, 133 N.M. 257, 62 P.3d 348. Our rules state that "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked." Rule 12-216(A) NMRA; *see also Schuster*

9

*v. State Dep't of Taxation & Revenue, Motor Vehicle Div.*, 2012-NMSC-025, ¶ 33, 283 P.3d 288. Exceptions are allowed for matters of general public interest or for fundamental error. *See* Rule 12-216(B). We have recently stated that reasons behind the rule are:

> (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue.

*Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 50, 146 N.M. 698, 213 P.3d 1127.

In the case before us, there is no evidence that Defendant objected to the district court's refusal to allow a jury instruction for self-defense and the right to not retreat as to Defendant. A review of the discussion of jury instructions before the court at the end of the penultimate day of trial reveals the following events.

The issue of a self-defense instruction was first brought up by the State, which explained that it had received from co-defendant Samuel UJI 14-5190 NMRA, an instruction on the right to not retreat. The court first addressed the threshold issue of Samuel's right to self-defense and noted that "there is really not any evidence of self-defense." The court later stated: "So it doesn't sound like he's really got a self-defense argument." The court rejected the UJI but then moved on to entertain a jury

instruction for the other three co-defendants for defense of another. The court appeared to confuse self-defense with the defense of another and stated the opposite of what it intended: "I'll allow the self-defense suggested earlier in your elements instruction and the statement in the instruction I'm allowing on self-defense, but there's not a defense of another." Defendant's attorney recognized the confusion because he immediately gave the court a copy of an instruction for defense of another, and the court promptly asked the State if it objected to the instruction for defense of another. The parties proceeded to debate whether the instruction for defense of another should include the version that involves a response with deadly force. When the parties finally agreed on a version of the instruction for defense of another, the court announced that it would allow UJI 14-5182 NMRA, the version of the instruction for defense of another that does not mention deadly force.

The court then moved on to the propriety of an instruction for the right to not retreat, UJI 14-5190 that was agreed to by the State. In attempting to clarify the actual language to be used in the instruction, the following exchange occurred:

> Court: But [UJI 14-5190] needs to be modified to indicate it's the defense of another. Do you have objection to that from . . . defense counsel?
> [Defendant's Counsel]: No, [y]our honor.

A few moments later, Defendant's counsel summed up the agreement among the parties:

11

[Defendant's Counsel]: I think just self-defense to the defense of, not the defense of another. So I think it's not—there is a no for the three of us. *We can't say self-defense*. It would be the defense of another.

Court: Defense of another is just like self-defense, only that you're going to the rescue of someone else.

[Defendant's Counsel]: I understand that.

(Emphasis added.) The court eventually rejected an instruction for the right to not retreat following this exchange:

Court: You're saying everybody is agreeing a person who is threatened with an attack need not retreat. I don't think that even really applies in this situation.

[Defendant's Counsel]: I agree. I think it's self-defense.

Court: *That's not coming in either*.

[Defendant's Counsel]: Right.

Court: We'll not give either [self-defense or right to not retreat]. We'll just give [UJI] 14-5182 [defense of another].

[Defendant's Counsel]: Right. I think those [rejected instructions] go to self-defense, not defense of another.

Court: Right

[Defendant's Counsel]: Right.

(Emphasis added.)

It is clear from context that the court rejected jury instructions on self-defense and the right to not retreat. At no time did Defendant's counsel object to the court's ruling. In fact, Defendant's counsel expressed agreement with the court's ruling. The court eventually allowed a jury instruction on behalf of Defendant for defense of another. No instruction was given for self-defense or the right to not retreat.

We conclude that Defendant concurred as the district court sorted out the jury

12

instructions and did not object when the court eventually chose the instruction for defense of another, rejecting the instructions for self-defense and the right to not retreat. In fact, Defendant's counsel never argued that Defendant was entitled to a self-defense instruction, and a self-defense instruction was not included among Defendant's requested jury instructions. In sum, Defendant abandoned any claim to the request for a self-defense instruction first noted by the State before the court or for an instruction on the right to not retreat, and his argument fails all three prongs of the *Kilgore* test: Defendant's counsel failed to argue in favor of either jury instruction and thus invoke a ruling by the court, opposing counsel was not given an opportunity to argue the merits of the jury instructions, and the record is not fully developed on the matter. 2009-NMCA-078, ¶ 50. We conclude that Defendant failed to preserve this argument, and we decline to address it.

As to the jury instruction for the right to not retreat, we further note that the trial court was not required to give this instruction because the giving of UJI 14-5190 is premised on a claim of self-defense. *See State v. Nozie*, 2007-NMCA-131, ¶ 14, 142 N.M. 626, 168 P.3d 756 (rejecting the defendant's claim that he was entitled to UJI 14-5190 where he did not put self-defense at issue).

**5.      Directed Verdict for Aggravated Battery With a Deadly Weapon**

Defendant contends that the district court erred in denying his motion for

directed verdict as to aggravated battery with a deadly weapon, because no witness sufficiently linked the two weapons involved during the attack—brass knuckles and a metal chair—to Defendant.  A directed verdict is a drastic measure that is generally disfavored in that it threatens to interfere with the jury's function and one's right to a trial by jury.  *See Perez v. City of Albuquerque*, 2012-NMCA-040, ¶ 7, 276 P.3d 973.  A trial court should not grant a motion for directed verdict unless it is clear that "the facts and inferences are so strongly and overwhelmingly in favor of the moving party that the judge believes that reasonable people could not arrive at a contrary result."  *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 729, 749 P.2d 1105, 1108 (1988).  "Any conflicts in the evidence or reasonable interpretations of the evidence are viewed in favor of the party resisting the directed verdict."  *Sunwest Bank of Clovis, N.A. v. Garrett*, 113 N.M. 112, 115, 823 P.2d 912, 915 (1992).  "We review de novo the district court's decisions on the motions for directed verdict."  *Perez*, 2012-NMCA-040, ¶ 7.  Specifically, our inquiry "asks whether sufficient evidence was adduced to support the underlying charge."  *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198.

In the case before us, the district court found sufficient evidence of a link between Defendant and a weapon to send the question to the jury.  "The test for sufficiency of the evidence is whether substantial evidence of either a direct or

14

circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *Id.* (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez,* 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). The State was required to prove that Defendant touched or applied force to Arnold or Carlos with the brass knuckles or metal chair with the intent to injure them. *See* UJI 14-322 NMRA. Defendant contends that neither of those two victims described actually seeing brass knuckles or a metal chair in Defendant's possession and that witnesses instead suggested that others wielded the weapons. Defendant also hypothesizes that one of the victims may have used the set of brass knuckles that were found at the spot where Carlos hopped over the wall along the property.

The State presented witness testimony that offered evidence of an attack by Defendant with a weapon. Robert testified that Defendant hit him in the face with what felt like a brick, and then he saw Defendant attack Arnold. Arnold testified that Defendant hit him in the face with a sharp object. Officer Brown found the set of brass knuckles at the scene and noted that the victims' injuries were the result of blows that were landed with more than just hands and fists. Robert testified that he saw Defendant pick up the chair and move toward Carlos intending to hit him on the

15

head with it. Carlos testified that he saw an object coming at him from above and that he raised his arm to block it and blunt its impact. He also testified that he was hit with a punch that seemed like it was more than just a fist. In addition to the set of brass knuckles, a metal chair was found at the scene by police. The evidence presented by the State was substantial enough to convince a reasonable juror that Defendant had attacked at least two of the victims with either brass knuckles or a metal chair. *Cf. Landavazo*, 111 N.M. at 138, 802 P.2d at 1284 ("Evidence is substantial even if it barely tips the scales in favor of the party bearing the burden of proof."). We are not swayed by the fact that Defendant posits plausible alternative theories and explanations. *See Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 ("The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached."). Therefore, we conclude that the district court did not abuse its discretion in denying Defendant's motion for a directed verdict on the charge of aggravated battery with a deadly weapon.

**6.      Directed Verdict for Conspiracy**

Defendant also argues that there was insufficient evidence to support the count of conspiracy and that therefore his motion for directed verdict should have been granted. The State argues that, because Defendant was acquitted of the charge of

16

conspiracy, the issue is moot.

We focus on the question of mootness. "A reviewing court generally does not decide academic or moot questions," *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273, and "[a] case will be dismissed for mootness if no actual controversy exists." *City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶ 16, 124 N.M. 640, 954 P.2d 72. However, an appellate court may address such a case on the merits if it presents issues that are of substantial public interest or are capable of repetition yet evading review. *Cobb v. State Canvassing Bd.*, 2006-NMSC-034, ¶ 14, 140 N.M. 77, 140 P.3d 498. The issue of mootness is a jurisdictional question that we review de novo. *See Garcia v. Dorsey*, 2006-NMSC-052, ¶ 13, 140 N.M. 746, 149 P.3d 62; *In re Qwest Commc'ns Int'l, Inc.*, 2002-NMSC-006, ¶ 3, 131 N.M. 770, 42 P.3d 1219.

Defendant's main argument against mootness is that we have the ability to grant a new trial on only the two counts of aggravated battery with a deadly weapon, which would offer him a chance to adjust his trial strategy without the potential for a conspiracy conviction. Defendant does not complain that the State had no basis to bring the charge of conspiracy in the first instance—merely that the State had not proved its case. Either way, because we affirm the district court on all counts and do not grant a new trial on any issue, Defendant's argument has no merit. We also do not

find Defendant's conviction for conspiracy to present us with an issue of substantial public interest; nor is it one capable of repetition yet evading review. We conclude that the issue is moot, and we therefore do not address the question of whether a directed verdict was proper.

**7.     Ineffective Assistance of Counsel**

Finally, Defendant contends that he received ineffective assistance of counsel because his attorney failed to file a motion to dismiss based on alleged deficiencies in the investigation of the crime scene by police officers. "Questions of ineffective assistance of counsel are reviewed de novo." *State v. Joanna V.*, 2003-NMCA-100, ¶ 11, 134 N.M. 232, 75 P.3d 832, *aff'd*, 2004-NMSC-024, 136 N.M. 40, 94 P.3d 783.

In general, assistance of counsel is presumed to be effective. *See State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127. To establish a prima facie case of ineffective assistance of counsel, a defendant has the burden of proving that (1) his attorney's performance fell below that of a competent attorney and (2) he was prejudiced by that deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. In reviewing whether a defendant has met the burden of establishing such a prima facie case, we will not second-guess the trial tactics of the attorney. *Id.* ¶ 11. We note that our Supreme Court has stated that "habeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel

18

claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 (alteration, internal quotation marks, and citation omitted).

Defendant focuses his argument on deficiencies in the police investigation and claims that his attorney was incompetent for failing to file a motion to dismiss based on those grounds. Defendant contends that the police investigation was deficient because officers (1) conducted a prejudicial show-up identification, (2) did not test the alcohol level of the victims, (3) failed to conduct DNA testing of the blood on the brass knuckles, (4) failed to gather fingerprint evidence, (5) never reviewed Defendant's cellular phone records, (6) failed to search for evidence of alcohol containers in the garbage, and (7) failed to investigate additional witnesses. Defendant argues that, because of this deficient investigation, he was entitled to dismissal of the charges pursuant to *State v. Ware*, 118 N.M. 319, 881 P.2d 679 (1994), which provides a remedy for defendants prejudiced by law enforcement's failure to adequately collect material evidence at a crime scene.

In *Ware*, the Court articulated a two-part test for determining whether the State's failure to collect evidence deprives a defendant of a fair trial:

> The first factor is whether the evidence is relevant, material, or important to the defense, as opposed to extraneous or duplicative of other evidence.

> The second factor goes to the character of the officers investigating the crime scene—whether they acted in good faith, bad faith, or negligently when deciding not to gather the specific evidence at the crime scene.

*Id.* at 325, 881 P.2d at 685 (citations omitted). As to the first prong, evidence is considered material "only if there is a reasonable probability that, had the evidence been available to the defense, the result of the proceeding would have been different." *Id.* (alteration, internal quotations marks, and citations omitted). As to the second prong, a court must determine whether law enforcement's failure to collect evidence was done in bad faith or was the result of the officers' gross negligence. *See id.* "When the failure to gather evidence is merely negligent, an oversight, or done in good faith, sanctions are inappropriate[.]" *Id.*

The question before us is whether Defendant's counsel was ineffective for failing to pursue a motion to dismiss under *Ware* based on the seven allegations noted above. We first note, as the State points out, that five of Defendant's allegations—relating to the failure to conduct a lineup, test the blood sample for DNA, check the brass knuckles collected at the scene for fingerprints, pull the phone records of the co-defendants, and pursue other witnesses for questioning—have nothing to do with collecting evidence at the scene but rather go to the investigation's procedures. None of those aspects of the investigation fall under the *Ware* analysis. *See State v. Chandler*, 119 N.M. 727, 735, 895 P.2d 249, 257 (Ct. App. 1995) (stating that failing

to file a motion that would prove futile does not constitute ineffective assistance of counsel), *modified on other grounds by State v. Vargas*, 2007-NMSC-006, 140 N.M. 864, 149 P.3d 249. We now turn to the two remaining allegations.

Defendant faults the officers for not searching trash bins for further evidence. However, he offers no details and makes no argument as to how such evidence would have been relevant or material to his defense or whether officers' failure to search the trash bins may have been an act of bad faith or gross negligence. We will not make Defendant's argument for him. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

Finally, Defendant notes that police failed to test the blood-alcohol content of the victims. Officer Brown testified that two of the victims suffered "massive injuries" and needed to be taken to the hospital immediately, which made it implausible to photograph the victims let alone hold them to perform blood tests. And while the other two victims were not in need of hospital care, officers at the scene noted that both men had been drinking and appeared to be intoxicated, and photographs were taken of beer cans strewn on the property. It is questionable that a blood-alcohol test would be material to the issue of the credibility of the victims or change the outcome of the case, considering the abundance of evidence of drinking

21

at the party and the admission by the victims who testified that they had been drinking as early as 2:00 p.m. the day before the fight broke out in the early morning hours of August 9, 2008. Even if a blood-alcohol test were deemed to be material to the investigation, Defendant can point to no evidence that the officers' decision not to test the victims' blood-alcohol levels was a result of bad faith or gross negligence. The strategy of Defendant's attorney to opt against a motion for dismissal based on the failure to search trash bins and or to perform blood tests on the victims does not rise to the level of ineffective assistance of counsel.

## III.    CONCLUSION

For the foregoing reasons, we affirm Defendant's conviction.

**IT IS SO ORDERED.**


_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**MICHAEL D. BUSTAMANTE, Judge**